## JAMES H. BROWN v. ESTELLA MARSHALL.

*Order of proof—Distinction between contributory and subsequent negligence—Apothecary's mistake.*

The order of proof is in the sound discretion of the trial judge, and a judgment will not be reversed because he has suffered the plaintiff to give evidence in rebuttal which should have been given before the defendant took the case.

Contributory negligence in order to constitute a defence must have been negligence contributing to the injury itself for which the action is brought. If it was subsequent negligence, and only contributed to increase the injurious consequences, it goes to the amount of recovery only.

Therefore if a druggist sell one medicine for another and injury results from taking it, it is no defence for him that the case was negligently treated and cared for. The case differs from one of alleged malpractice, where the negligence of the physician and patient concur in the injury.

A druggist who delivers one medicine when another is called for, is responsible for the consequences on the ground of negligence only. If the error occurred without fault on the part of himself or his servants, the case is like one of inevitable accident, and the druggist is not liable though injurious consequences follow.

Error to Kent.　Submitted Jan. 17.　Decided Jan. 25.

CASE. Defendant brings error. Reversed.

*J. W. & O. C. Ransom*, for plaintiff in error, cited as to subsequent contributory negligence : Cooley on Torts 674 ; *Williams v. Mich. Central R. R.* 2 Mich. 259 ; *L. S. & M. S R. R. v. Miller* 25 Mich. 274 ; *Mich. Cent. R. R. v. Campau* 35 Mich. 468.

*Hughes, O'Brien & Smiley*, for defendant in error, cited 2 Thomp. Neg. 1091 ; *Collins v. Council Bluffs* 32 Ia. 324 ; *Rice v. Des Moines* 40 Ia. 638 ; *Lawrence v. Housatonic R. R.* 29 Conn. 390 ; *Stover v. Bluehill* 51 Me. 439 ; *Eastman v. Sanborn* 3 Allen 594.

COOLEY, J. Marshall sued Brown in case to recover damages for a negligent injury. The facts which she claims to have established on the trial and on which she relied for a recovery are that in February, 1876, being confined to her bed by illness, at her home in Grand Rapids, and desiring to take sulphate of magnesia or Epsom salts, as a medicine, she sent her sister to the store of defendant, who is a druggist in the same city, to procure the salts for her; that her sister called for ten cents worth of Epsom salts, and was waited upon by one Adsit, a clerk of defendant, who delivered to her what he said was the article she called for, remarking at the time in explanation of an unusual appearance, "It is pure salts, but it is a little dark from exposure ;" that the article was taken to plaintiff, who dissolved the same in water and took a portion thereof; that she immediately felt a burning sensation and was very sick, and suspecting something wrong, remedies were at once given as for poison ; that what remained of the article she had thus procured was afterwards examined and found to be sulphate of zinc, or white vitriol; that the delivery of this to her sister in response to her call for Epsom salts, was through the gross negligence of defendant's clerk Adsit, and that she was seriously and permanently injured in health thereby.

The case was tried by jury, and a verdict of fifteen hundred dollars damages returned for the plaintiff. A number of errors are assigned to the rulings on the admission of evidence. One of these is to permitting a supposed medical expert to testify to the effects of sulphate of zinc when taken into the system, from what he learned on the subject from books of recognized authority. The evidence was not incompetent. *Collier v. Simpson* 5 C. & P 73; *Taylor v. Railway* 48 N. H. 304. It was not very satisfactory expert evidence, but its weight was for the jury. Several errors are assigned to the plaintiff being allowed, after the evidence for the defence had been put in, to give testimony of facts which were not rebutting and which should have been given, if at all, as a part of her case in chief. But we have repeatedly decided that we cannot reverse a judgment on this ground. *Detroit etc. R. R. Co. v. Van Steinburg,* 17 Mich. 99; *Thompson v. Richards* 14 Mich. 172. The order of proof must be left to the sound discretion of the circuit judge, and it will not be interfered with unless in case of plain abuse. *Hoffman v. Harrington* 44 Mich. 183. Nothing in the record indicates an improper exercise in this case.

The only assignments of error that seem to us to require much attention relate to the charge of the judge on the question of negligence. The defendant insisted that the subsequent treatment of the plaintiff with a view to relieve her of the drug was improper and well calculated seriously to injure her, and he relied upon this treatment as evidence of contributory negligence. It appeared that eggs, milk, sweet oil, brandy, and warm water were administered for the purpose of producing vomiting, and the judge instructed the jury as follows: "If you should find from the evidence in the case that the giving of large quantities of eggs, milk, sweet oil, brandy, and warm water was the cause of long and continued vomiting, and that said vomiting was the cause of the injury or injuries claimed to have been suffered by the plaintiff, and if you find from the evidence that such treatment was improper, then the plaintiff cannot

recover in this action, and your verdict should be for the defendant."

The defendant was not satisfied with this instruction, and requested that the following should be given :

"If you should find from a preponderance of evidence in the case that the drug or medicine alleged to have been given to the plaintiff was in fact white vitriol, and you should also find that the same was purchased at the defendant's store, and put up by his agent for and as Epsom salts, and that said drug so purchased was administered to the plaintiff, and that the plaintiff, her nurse or physician, were more or less negligent in administering the same, or in taking care of said plaintiff, and in their treatment of her immediately after said drug had been administered, and that such carelessness or negligence of the plaintiff, her nurse or physician, or any person in charge of her, caused or contributed to the injuries alleged to have been sustained—provided you find that any were sustained—then the plaintiff cannot recover in this action and your verdict should be for the defendant.

"If you find from the evidence in the case that white vitriol was in fact sold by the agent of the defendant to the plaintiff, and that the plaintiff took an overdose of the same, yet, unless you also find that the injury or injuries claimed to have resulted to the plaintiff were caused solely from the taking of such overdose of white vitriol, and were not caused by improper treatment of plaintiff immediately thereafter by her physician or attendant, plaintiff cannot recover in this action, and your verdict should be for the defendant.

"If you find from the evidence in the case that white vitriol was in fact sold by the agent of the defendant to the plaintiff, and that the plaintiff took an overdose of the same, yet, unless you also find that the injury or injuries claimed to have resulted to the plaintiff were caused solely by the taking of such overdose, and were not contributed to or increased by improper treatment of plaintiff immediately thereafter by her physician or attendants, plaintiff cannot recover in this action, and your verdict must be for the defendant; for you must not only be satisfied from the evidence in the case that white vitriol was in fact sold and administered to plaintiff in an overdose so as to make it poison, but you must also be satisfied from the evidence that such injury or injuries—if you are satisfied that any were sustained—were the result of the taking of such over-

dose, and were not contributed to or increased by such improper treatment; for if such injury or injuries resulted from the mutual fault of the defendant and plaintiff, the law will neither cast all the consequences upon the defendant, nor will it attempt to make any apportionment thereof, and the burden of proof is upon the plaintiff to show that, the defendant is wholly in fault."

These three requests were refused. On a careful examination of them it is apparent that they do not direct the attention of the jury to supposed contributory negligence of the plaintiff, her agent, physician, nurse or attendant, in the purchase of the drug, or in the administration of the same to the plaintiff. It is not suggested that there was any negligence on the part of the plaintiff, or on the part of any other person for whose conduct she is to be held responsible, until after the drug was administered, or until means were resorted to for the purpose of preventing injurious consequences. Neither is it suggested that the negligence of the defendant—if it was established to the satisfaction of the jury—did not, independently of any negligence of the plaintiff or of any one whose negligence is to be imputed to her, produce some injury to the plaintiff which might support an action had there been no subsequent negligence. What the requests do suggest is, that if the defendant causes an injury to the plaintiff, and the plaintiff afterwards increases the injurious consequences by his own fault or the fault of his agents or servants, this blameworthy contribution to the injury takes away any right of action for the defendant's fault which otherwise would have existed. The contributory negligence then comes in, not to prevent a cause of action arising but to discharge one that has already arisen.

No such doctrine is consistent with good sense or sound law. A tort arises when there is a thing amiss with resulting damage. If the drug was negligently sold, as is charged in this case, and was subsequently taken by the plaintiff without fault on her part or on the part of any one whose act in administering it is to be imputed to her, these facts constitute that necessary concurrence of wrong and damage

which will support an action. It is not necessary to inquire into the subsequent treatment of the case in order to determine the question of legal wrong. A heedless attendant cannot release the defendant from his responsibility by neglecting his own duty, nor can the physician do so by treating the case improperly. But the question of the extent of the injury which is traceable to the defendant's negligence is another matter altogether. To judge of that it is necessary to inquire into the care and treatment which the plaintiff subsequently received. If it shall appear that the injury to plaintiff's health is traceable not to the drug itself, but to improper treatment or want of due care after it was taken, it will then be obvious that the plaintiff's injury at the hand of the defendant is merely nominal. The question will then become one of damages only, and must be disposed of by the jury.

The circuit judge therefore did not err in refusing these instructions. *Wilmot v. Howard* 39 Vt. 447; *Hathorn v. Richmond* 48 Vt. 557. He had already gone far enough, if not too far, in the same direction, in the instruction he had given. There are cases having some resemblance to this in which such instructions might be proper, but the distinction is sufficiently obvious on a moment's consideration. A case of alleged malpractice is an illustration: A patient sues his physician for injuries consequent upon unskilful or negligent treatment of his case, and the physician defeats his action by showing that the patient's own negligence contributed to the injury. *Hibbard v. Thompson* 109 Mass. 286; *Geiselman v. Scott* 25 Ohio (N. S.) 86; *Potter v. Warner* 91 Penn. St. 362. But in such a case the negligence of the patient comes in to qualify, affect and change the treatment of the physician in which the negligence is to be found, and a remedy is denied for the reason that the two, by the act of the patient himself, were combined in the very facts on which he relies to show his injury.

On the subject of what is to be deemed negligence in the defendant which will support an action we are constrained to say the circuit judge, if his charge is correctly given in

the record, was not consistent with himself, and in one of his instructions not accurate. He first told the jury that to entitle the plaintiff to recover they must find that Adsit, the clerk, was careless in the delivery of sulphate of zinc instead of sulphate of magnesia, and that he did not exercise that degree of care which his duty and the business he was engaged in required of him. He was requested to instruct them that negligence was established by proof of the fact that the one article was put up and delivered when the other was called for; but this he declined.

The record shows, however, that after the jury had received their instructions and consulted together for a time, they returned into court and requested further instructions on certain points. This gave the parties opportunity for other requests and some were given and some refused. As to what would constitute negligence in druggists, the judge gave the following: "It is the duty of druggists to know the properties of the medicines which they sell, and to employ such persons as are capable of discriminating and dealing out according to prescription; and if the defendant's clerk in this case sold and delivered to plaintiff a poison instead of a harmless drug, and the plaintiff took it supposing it to be harmless, and was thereby caused a suffering and a serious injury, the defendant is liable for all damages so caused in this suit."

In this instruction there is no hint of negligence as a necessary element in the right of action. The duty is correctly stated, and it is assumed that a right of action will arise from a failure to perform it, irrespective of the reasons. If the judge is wrong in this, the judgment cannot stand; for though there are other instructions which seem to be inconsistent with this, we cannot know that the jury did not shape their action by this rather than by any other. The question then is whether the delivery at a drug store of a deleterious drug to one who calls for one that is harmless, and a damage resulting therefrom, will not merely tend to make out a right of action, but of themselves give a right

of action even though there may have been no intentional wrong and the jury may believe there was no negligence.

That such an error might occur without fault on the part of the druggist or his clerks is readily supposable. He may have bought his drugs from a reputable dealer in whose warehouse they have been tampered with for the purposes of mischief. It is easy to suggest accidents after they come to his own possession, or wrongs by others of which he would be ignorant, and against which a high degree of care would not give perfect protection. But how the misfortune occurs is unimportant if under all circumstances the fact of occurrence is attributable to him as legal fault.

The case, it must be conceded, is one in which a very high degree of care may justly be required. People trust not merely their health but their lives to the knowledge, care and prudence of druggists, and in many cases a slight want of care is liable to prove fatal to some one. It is therefore proper and reasonable that the care required shall be proportioned to the danger involved. But we do not find that the authorities have gone so far as to dispense with actual negligence as a necessary element in the liability when a mistake has occurred.

In the leading case of *Thomas v. Winchester* 6 N. Y. 397, where a druggist carelessly labelled a poison as a harmless medicine and sold it accordingly, his liability for the consequences was expressly grounded upon actual negligence. So it was in *Norton v. Sewall* 106 Mass. 143, which follows the case in New York.

In *Fleet v. Hollenkemp* 13 B. Monr. 219, a druggist in compounding a medicine ground the different ingredients in a mill which had been used for poisonous drugs and did not first properly clean it. They claimed to go to the jury on the question of due care, and under instructions that if they used due care, or at least if they used extraordinary and unusual care, they were not liable in a civil action. The Court of Appeals justly say: "It is absurd to speak of degrees of diligence and of negligence as excusing or not excusing, or as settling the question of liability or no lia-

bility, in a case where the vendor of drugs, being required to compound innocent medicines, runs them through a mill in which he knew a poisonous drug had shortly before been ground." In *George v. Skivington* L. R. 5 Exch. 1, which was disposed of on demurrer, negligence was averred. It may seem a hard rule which throws upon the purchaser the consequences of a mistake by another, but it is the same rule which in other cases leaves the consequences of inevitable accident where they have chanced to fall. *Weaver v. Ward* Hob. 134; *Bizzell v. Booker* 16 Ark. 308; *Losee v. Buchanan* 51 N. Y. 476; *Morris v. Platt* 32 Conn. 75; *Gault v. Humes* 20 Md. 297; *Burton v. Davis* 15 La. Ann. 448. The judge, therefore, instead of submitting the mistake to the jury as something in itself necessarily constituting a cause of action, should have submitted it as matter of evidence on the question of negligence, of the cogency of which it was their right and their duty to judge.

The judgment must be reversed with costs and a new trial ordered.

The other Justices concurred.