H. C. CRIGGER *v.* COCA-COLA BOTTLING COMPANY.

(*Jackson.*  April Term, 1915.)

1. **FOOD.  Injurious substances.**

The duty of one who prepares and puts on the market, in bottles or sealed packages, foods, drugs, beverages, medicines, or articles inherently dangerous of exercising care to see that nothing unwholesome or injurious is contained in the bottle or package is not in the nature of an implied warranty, and is based upon negligence.  (*Post, pp.* 548-552.)

Cases cited and approved:  Boyd v. Coca-Cola Bottling Works, 132 Tenn., 23;  Jackson Coca-Cola Bottling Co. v. Chapman (Miss.), 64 So., 791;  Thomas v. Winchester, 6 N. Y. (2 Selden), 397;  Salmon v. Libby, 219 Ill., 421;  Tomlinson v. Armour, 75 N. J. L., 748;  McQuaid v. Ross (Wis.), 22 L. R. A., 195;  Bishop v. Weber, 139 Mass., 411;  Huset v. J. I. Case Threshing Mach. Co., 120 Fed., 865;  Wellington v. Downer Kerosene Oil Co., 104 Mass., 64;  Van Bracklin v. Fonda, 12 Johns. (N. Y.), 468;  Craft v. Parker (Mich.), 21 L. R. A., 139;  Brown v. Marshall, 47 Mich., 576;  Fleet v. Hollenkemp, 13 B. Mon. (Ky.), 219;  Blood Balm Co. v. Cooper, 83 Ga., 457;  Weiser v. Holzman, 33 Wash., 87;  Peters v. Jackson, 50 W. Va., 644;  Farrell v. Manhattan Market Co., 198 Mass., 271;  Crocker v. Baltimore Dairy Lunch Co., 214 Mass., 177.

Case cited and distinguished:  Watson v. Augusta Brewing Co., 124 Ga., 121.

2. **FOOD.  Sales.  Injurious substances.**

One who prepares and puts on the market, in bottles or sealed packages, foods, drugs, beverages, or articles inherently dangerous is liable for breach of a duty to the public in the preparation thereof, regardless of the privity of contract to any one injured for a failure to properly safeguard and perform such duty. (*Post, p.* 552.)

132Tenn.35

3. **FOOD.    Deleterious beverage.    Evidence.**

In an action for damages for an illness caused by swallowing a
    decomposed mouse in a bottle of Coca-Cola purchased from a
    local dealer to whom it had been sold by a bottling company,
    evidence *held* to sustain a finding that the bottling company
    was not at fault.    (*Post, pp.* 552, 553.)

---

FROM SHELBY.

---

Appeal from the Circuit Court of Shelby County to
the Court of Civil Appeals, and by *certiorari* from the
Court of Civil Appeals to the Supreme Court.—Hon.
A. B. Pittman, Judge.

King & Lanier, for plaintiff.

Bell, Terry & Bell and Caruthers Ewing, for de-
fendant.

Mr. Justice Fancher delivered the opinion of the
Court.

The plaintiff drank a bottle of Coca-Cola, a beverage
sold generally on the market as wholesome and harm-
less.   In doing so he took into his mouth, and partially
swallowed, a decomposed mouse, which caused him to
become very sick, and he sues for damages.   The de-
fendant does not make the beverage, but buys it in
barrels from the manufacturer and bottles it.

The bottle in question was sold by defendant to a
local dealer and by him sold to plaintiff.

The question presented is, whether a bottling com-
pany engaged in bottling Coca-Cola, a beverage made

by another, warrants to the ultimate consumer that its bottle contains no injurious, harmful, or deleterious substance, or is the bottling company liable only for negligence, or the omission to use proper care in the work?

The proof shows that the method used at the bottling plant is fully equal to the best. The empty bottle is passed through vats of strong caustic soda solution and then rinsed under pressure with water as hot as the bottle will stand, then inspected by the use of a strong electric light, then brushed out with a rapidly revolving brush and again rinsed; the bottle is again inspected over a brilliant electric light, and then filled with Coca-Cola, using a fine strainer, when it is capped, and finally inspected.

The trial judge charged the jury on the theory that if the defendant was free from negligence in the bottling of the beverage there was no liability. The jury found in favor of the defendant, and judgment was accordingly entered. The court of civil appeals affirmed on the ground that the declaration averred negligence and the jury had found against plaintiff on that question.

The case is briefed here in support of the petition for *certiorari,* and by the defendant, as to whether there is an implied warranty on the part of the Coca-Cola Bottling Company, which results in favor of the ultimate consumer, regardless of any question of negligence. The declaration, liberally treated, will admit

the question, and the case must be determined upon that standard.

In the case recently determined by this court of *Boyd* v. *Coca-Cola Bottling Works,* 177 S. W., 80, opinion by Mr. Justice Green, the defendant was held liable to the ultimate consumer for injuries from drinking a bottle of Coca-Cola in which was contained a cigar stub. The bottle in that case was bought from an intermediate dealer, to whom the defendant manufacturer had sold it, and it was held that want of contract or privity between defendant and the person injured constituted no defense. It was determined in that case that beverages fall within the class of articles such as foods and medicines, where a liability may exist upon the ground that one placing upon the market such products in sealed bottles assumes a duty to the general public of exercising care to see that nothing unwholesome or injurious is contained in the bottle. For a negligent breach of this duty the defendant was liable.

In the present case, we are to inquire a step further. Does this duty exist regardless of negligence, and is it in the nature of an implied warranty? Some of the cases seem to so hold. The case of *Jackson Coca-Cola Bottling Co.* v. *Chapman* (Miss.), 64 South., 791, 7 Neg. & Com. Cas. Ann., 112, note, seems to go this extent, citing *Watson* v. *Augusta Brewing Co.,* 124 Ga., 121, 52 S. E., 152, 1 L. R. A. (N. S.), 1180, 110 Am. St. Rep., 157.

In the *Augusta Brewing Company Case,* the supreme court of Georgia stated the rule to be:

"When a manufacturer makes, bottles, and sells . . . a beverage represented to be refreshing and harmless, he is under a legal duty to see to it that in the process of bottling no foreign substance shall be mixed with the beverage which, if taken into the human stomach, will be injurious."

It does not appear that the direct question was at issue in that case as to a warranty, regardless of negligence. Most of the cases on the question show some negligence or omission of duty or care, and are based upon that idea.

There are many authorities holding an implied warranty to exist, as between seller and buyer of articles to be used for a specific purpose, that such articles are proper and suitable for the use to which they are to be applied. But we see no reason or principle upon which a warranty might run with an article for consumption like a warranty of title running with land. We think the real ground of liability of the seller to an ultimate consumer is, more properly speaking, a duty one owes to the public not to put out articles to be sold upon the markets for use injurious in their nature, of which the general public have not means of inspection to protect themselves. This duty has been applied to manufacturers of drugs, foods, beverages, poisons, and other things inherently dangerous.

One of the leading cases on the subject is *Thomas v. Winchester,* 6 N. Y. (2 Selden), 397, 57 Am. Dec., 455.

That case is referred to in many more recent opinions. A manufacturing druggist was held liable for negligently putting up, labeling, and selling as and for the extract of dandelion, a simple and harmless medicine, a jar of the extract of belladonna, which is a deadly poison, whereby the plaintiff was injured, on the ground of a breach of a public duty, and that this was the result whether the injured person is an immediate customer of defendant or not. Negligence was the basis of liability in that case, as it was in most cases of this nature. See notes 57 Am. Dec. (Extra Ann.) 568; *Salmon* v. *Libby,* 219 Ill., 421, 76 N. E., 573; *Tomlinson* v. *Armour,* 75 N. J. L., 748, 70 Atl., 314, 19 L. R. A. (N. S.), 923 (negligence in preparation of canned meat); note to *McQuaid* v. *Ross* (Wis.), 22 L. R. A., 195; *Bishop* v. *Weber,* 139 Mass., 411, 1 N. E., 154, 52 Am. Rep., 715 (negligence in furnishing unwholesome meat); *Huset* v. *J. I. Case Threshing Mach. Co.,* 120 Fed., 865, 57 C. C. A., 237, 61 L. R. A., 303; *Wellington* v. *Downer Kerosene Oil Co.,* 104 Mass., 64 (negligence by manufacturer in selling dangerous article he knew to be an explosive); *Van Bracklin* v. *Fonda,* 12 Johns (N. Y.), 468, 7 Am. Dec., 339 (negligence in sale of unwholesome provisions, but holding that vendor is bound to know that they are sound and wholesome); *Craft* v. *Parker* (Mich.), 21 L. R. A., 139; note; *Brown* v. *Marshall,* 47 Mich., 576, 11 N. W., 392, 41 Am. Rep., 728 (opinion by Cooley, J., holding that a high degree of care is required of a druggist, but that actual negligence cannot be dispensed with as a necessary element

in liability when mistake has occurred); *Fleet* v. *Hollenkemp,* 13 B. Mon. (Ky.), 219, 56 Am. Dec., 563 (holding *caveat venditor* should apply to a druggist in seeing that his drugs are what they are. pretended to be, and that he cannot escape liability on a pretext that it was an accidental or innocent mistake); *Blood Balm Co.* v. *Cooper,* 83 Ga., 457, 10 S. E., 118, 5 L. R. A., 612, 20 Am. St. Rep., 324 (liability to ultimate consumer for wrong of proprietor of medicine in the prescription and direction as to dose); *Weiser* v. *Holzman,* 33 Wash., 87, 73 Pac., 797, 99 Am. St. Rep., 932 (liability without regard to privity of contract for knowingly selling and delivering to another, who is injured thereby, an article intrinsically dangerous, without notice to purchaser of intrinsic danger); *Peters* v. *Jackson,* 50 W. Va., 644, 41 S. E., 190, 57 L. R. A., 428, 88 Am. St. Rep., 909 (druggist liable from incompetency or negligence in selling to one person wrong poisonous medicine, whereby third person is injured); *Farrell* v. *Manhattan Market Co.,* 198 Mass., 271, 84 N. E., 481, 15 L. R. A. (N. S.), 884, 126 Am. St. Rep., 436, 15 Ann. Cas., 1076 (reviewing established English cases that hold there is no implied condition or warranty that a food is fit to be eaten, unless sold by a dealer and the food is selected by him, and concluding that this is the true rule); *Crocker* v. *Baltimore Dairy Lunch Co.,* 214 Mass., 177, 100 N. E., 1078, Ann. Cas., 1914B, 884 (that finding for plaintiff for injuries from what might be ptomaine poisoning is not warranted without any

evidence that the defendant was negligent in purchasing its food supplies).

From a careful consideration of the subject, and after mature thought, we are of opinion as follows:

1. That one who prepares and puts on the market, in bottles or sealed packages, foods, drugs, beverages, medicines, or articles inherently dangerous owes a high duty to the public, in the care and preparation of such commodities, and that a liability will exist regardless of privity of contract to any one injured for a failure to properly safe-guard and perform that duty.

2. This liability is based on an omission of duty or an act of negligence, and the way should be left open for the innocent to escape. However exacting the duty or high the degree of care to furnish pure foods, beverages, and medicines, we believe with Judge Cooley, as expressed in *Brown* v. *Marshall,* supra, that negligence is a necessary element in the right of action, and the better authorities have not gone so far as to dispense with actual negligence as a prerequisite to the liability. In fact, there is no logical basis of liability for personal injury without some negligent act or omission.

In the present case, the mouse may have gotten into the bottle by some unavoidable accident, but proper inspection should have disclosed the fact, and if in the light of the finding by the jury it were fairly inferable that the mouse was bottled up at the Bottling Company plant, we would consider it our duty to reverse the case, because of the high duty resting on the defendant.

Crigger v. Coca-Cola Bottling Co.

But the jury was told to inquire whether the mouse was in the bottle when it left the hands of this company, and, if so, whether its presence there was due to the negligence of the company. The court suggested to the jury the theory of the defendant that there was opportunity for malevolent persons to open this bottle and put the mouse into it before or after it left the factory, and they should use their common sense as men in deciding the issue. In view of the extraordinary care shown to exist at the bottling plant and the verdict of the jury, it may be that this thing occurred without the fault of the defendant. There are sufficient inferences that may be drawn from the facts to sustain the finding.

Affirmed.