12959

TATE v. MAULDIN

(154 S. E., 131)

*Messrs. Wilson & Wilson,* for appellant,

*Messrs. Gaston, Hamilton & Gaston* and *Hart & Moss,* for respondent,

394

August 14, 1930.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

The respondent in this case alleged, and he offered testimony to sustain the allegations of his complaint, material matters to the following effect: That the appellant, engaged in the business of bottling and placing on the market coca-cola and other bottled beverages, advertised and held out to the public generally, and to the respondent, that his bottled drinks were pure, wholesome, delicious, and refreshing; the respondent for some time had been in the habit of drinking the bottled beverages prepared and put on the market by appellant; that on September 9, 1927, or prior thereto, the appellant sold to McAteer & Dunlap, retailers of beverages, a certain bottle of coca-cola, and, on the date mentioned, the respondent bought that bottle for the purpose of drinking the coca-cola contained therein; that he

did attempt to drink it, and drank a part thereof, and in taking the beverage into his mouth, he took along with it parts of a rotten, decayed, and poisonous carcass of a rat or mouse, which was in the coca-cola; that, as a result, he immediately became sick and nauseated, and was seized with violent spasms and fits of vomiting, all of which caused him to suffer great mental anguish, mortification, embarrassment, great physical pain, impairment of digestion, loss of taste for certain foods and drinks, and permanent injuries to his health. Respondent demanded damages against the appellant in the sum of $10,000. As the basis for his claim, he alleged the facts already briefly stated, and further charged that his injuries were occasioned, directly and proximately, by the negligence, carelessness, and willfulness of the appellant, his agents and servants, in that the appellant bottled the said beverage with the rat or mouse therein; that he failed to use proper care to see that nothing unwholesome or injurious was contained in the drink; that the mouse was permitted to get into the beverage while, or after, being bottled at appellant's bottling works, and in failure to see that the bottle of coca-cola, sent out by him for consumption, contained no foreign substance injurious to health.

The appellant admitted that he was engaged in the bottling business, and that McAteer & Dunlap were among his customers, but denied generally all the other allegations of the complaint. He specifically denied any negligence on the part of himself or his agents and servants in bottling and placing on the market the particular bottle of coca-cola, alleged by the respondent to have contained the decomposed mouse. The appellant also said in his answer that "a long time prior thereto (September 9th, 1927) he had used in his bottling business the most modern machinery to insure cleanliness of his products, and adopting and using all methods known to be the highest state of the art of bottling, including the most thorough and rigid inspection through the entire process of bottling and dispensing." The appellant further

set up that the crowns on coca-cola bottles could be easily removed therefrom and replaced by hand, and that it was easy for any person, so disposed to do, to remove the crown of a bottle and place a foreign substance in the contents of the bottle after it had left his plant and had reached the hands of the retailer.

In the trial of the cause in the Court of Common Pleas for York County before a jury, his Honor, Circuit Judge T. J. Mauldin, presiding, there was a verdict in favor of the respondent for the sum of $2,500.00 actual damages. From the judgment entered thereon, the case has come to this Court.

The eleven exceptions of the appellant charge various errors on the part of the trial Judge, in refusing to direct a verdict in his favor, to grant him a new trial after verdict, in the admission of certain testimony offered by the respondent, in refusing to allow certain testimony sought to be introduced by the appellant, and incorrectly instructing the jury as to certain legal principles.

We consider first exceptions 5, 6, 7, 9, and 10. These relate to the failure of the trial Judge to grant the motion for a directed verdict, and the refusal to order a new trial, on these grounds: (1) That there was a total absence of any evidence going to show any negligence on the part of the appellant; (2) that there was opportunity for a third person to have put the foreign matter into the bottle after it reached the hands of the retailer; (3) the possibility that some one, including the respondent, could have placed the mouse in the bottle and recapped it, and there being no direct evidence of negligence in the operation of the bottling plant by the appellant or in the delivery of the bottle of coca-cola, and since the appellant showed extraordinary care in the bottling and distribution of the coca-cola, that the jury would have to go into the realm of conjecture and speculation in order to find any liability on the part of the appellant.

From statements to that effect in the arguments submitted in behalf of both the appellant and the respondent, and as a result of our own investigation, it seems that heretofore no case directly involving the legal principles applicable to the case at bar has come to this Court. Accordingly, it becomes necessary for us, in determining the questions here presented, to seek assistance from the decisions in other jurisdicitions and announcements of the law applicable to this cause as made in recognized text-books. Many articles and annotations on the subject of "Food," which term generally also includes beverages, have been written. We deem it altogether unnecessary to attempt even a slight review of the numerous holdings which may in some way or other affect the issues we have for settlement. We are content to approve certain principles, supported by many authorities, expressed in the following quotations from Corpus Juris:

(1) "A person who sells articles of food is under a legal duty to exercise reasonable care to insure their being wholesome and fit for consumption, and is liable in an action *ex delicto* on the ground of negligence for any injury resulting from their being unwholesome or unfit if he knew, or by the exercise of reasonable care could have known, their defective condition." 26 C. J., 783.

(2) "If a manufacturer of a food product disobeys the prohibition or neglects to perform the duty imposed by a pure food statute, negligence is implied from such violation or neglect, and he is liable for injuries resulting from the unwholesomeness of such food product regardless of his knowledge of its unwholesomeness." 26 C. J., 785.

(3) "Although differing in their reasoning, it is generally agreed by the authorities, that a manufacturer, packer, or bottler of foods or beverages is directly liable to a consumer for an injury caused by the unwholesomeness or the unfitness of such articles, although purchased

from a dealer or middleman and not from such manufacturer, bottler, or packer." 26 C. J., 785.

(4) "Want of negligence upon the part of defendant is a defense to an action of trespass on the case for selling unwholesome food. The fact that food has been duly inspected, as provided by Statute, does not relieve a vendor thereof for liability for its unwholesomeness or unfitness." 26 C. J., 787.

(5) "A purchaser of unwholesome food, who has been injured by partaking thereof, may not recover from the manufacturer or seller if he has been guilty of contributory negligence in so doing. And notwithstanding the statutory liability of the seller of impure food, the defense of defendant's contributory negligence is available." 26 C. J., 787.

The principles stated have received the approval of our General Assembly by the enactment of the Pure Food and Drug Law, now Section 398 of Volume 2 of the Code of 1922. Under the provisions of that section, it is made a misdemeanor "for any person to manufacture or sell, or offer for sale, any article of food or drug which is adulterated or misbranded, within the meaning of this section. * * *" The term "food," as used in the law, includes "all articles used for food, drink, confectionery, or condiment by man or other animals, whether simple, mixed, or compound." The Statute declares that the word "adulterated" refers to food or beverage which "consists in whole or in part of a filthy, decomposed or putrid animal or vegetable substance, or any portion of an animal unfit for food, whether manufactured or not. * * *"

A leading case on the liability of a bottler of beverages for public consumption, the decision in which has been approved and followed in many other decisions throughout the country, and one which has been used as the basis for extended annotation, is that of *Crigger v. Coca-Cola Bottling Company*, 132 Tenn., 545, 179 S. W., 155, 157, L. R.

A., 1916-B, 877, Ann. Cas., 1917-B, 572. That case arose because of the alleged fact that the plaintiff there, in drinking a bottle of coca-cola, took into his mouth, and partially swallowed, a decomposed mouse, which caused him to become very sick. While on the facts of the case a verdict in favor of the bottling company was sustained by the Supreme Court of Tennessee, the holdings made by the Court seems to us to be based on excellent reasoning; and since they are so applicable to the case at bar we quote verbatim some of the conclusions.

"1. That one who prepares and puts on the market, in bottles or sealed packages, foods, drugs, beverages, medicines, or articles inherently dangerous owes a high duty to the public, in the care and preparation of such commodities, and that a liability will exist regardless of privity of contract to any one injured for a failure to properly safeguard and perform that duty.

"2. This liability is based on an omission of duty or an act of negligence, and the way should be left open for the innocent to escape. However exacting the duty or high the degree of care to furnish pure foods, beverages, and medicines, we believe with Judge Cooley, as expressed in *Brown v. Marshall, supra* [47 Mich., 576, 41 Am Rep 728, 11 N. W., 392], that negligence is a necessary element in the right of action, and the better authorities have not gone so far as to dispense with actual negligence as a prerequisite to the liability. In fact, there is no logical basis of liability for personal injury without some negligent act or omission."

In the *Crigger case,* as in the case at bar, the defendant, bottling company, endeavored to show that the method used at the bottling plant was fully equal to the best; the empty bottles passed through a strong caustic soda solution and were then rinsed under pressure with water as hot as the bottles would stand, were then inspected by the use of a strong electric light, brushed out with a rapidly revolving brush; the bottles were then again inspected over an electric

light, then filled with coca-cola syrup, and were then capped and finally inspected. The trial Judge charged the jury, as the trial Judge charged in this case to the effect that if the defendant was free from negligence in the bottling of the beverage, there was no liability.

The Court in its opinion held to the effect that the mouse may have gotten into the bottle by some unavoidable accident, but stated that proper inspection should have disclosed the fact, and indicated that if the jury, by its verdict, had found against the bottling company, the verdict would have been upheld. The verdict against the plaintiff, however, was affirmed on the ground that there were sufficient inferences from the evidence adduced to sustain the finding.

It is our opinion that it would have been the duty of this Court to have sustained a finding in favor of the appellant, if the jury had so found, for there was right strong evidence that the appellant was not guilty of negligence. On the other hand, there was plenty of evidence to support respondent's claim that there was negligence, and the holdings in the *Crigger case* are authority for this position. We have to take the evidence as it comes to us in the transcript of record. The respondent testified that he walked into the store of the retailers, as he had often done before on his trips delivering mail, he being a mail carrier, for the purpose of buying and drinking a bottle of coca-cola; that he went to the ice box, where the beverage was kept, took a bottle of coca-cola, with the implement ordinarily used for the purpose, kept by the retailers, he opened the bottle, and began to drink the beverage; and in a little bit discovered the decomposed mouse. One of the members of the retailers' firm, and another witness, corroborated this testimony of the respondent. The retailer testified that the coca-cola had been purchased of the appellant, and that, in all probability, the particular bottle involved in this case was delivered to the retailers on the same day it was purchased by the respondent. The mouse

was badly decomposed, and its condition was such as to justify the jury in coming to the conclusion that it had been in the bottle for some little time. The respondent adduced some evidence to negative the suggestion that the mouse had been put into the bottle while in the custody of the retailers. Even if there was no negligence in the actual bottling of the beverage, the evidence was sufficiently strong to go to the jury on the issue of negligence in failure to properly inspect the bottle of coca-cola before it was sent from the bottling plant. Although the evidence for the appellant, as before indicated, strongly showed that his plant was in excellent condition, and there was great improbability that a mouse could get into a bottle of beverage during the bottling operation, the jury inspected the plant and saw for themselves the conditions there existing.

Of course, it is true, as suggested by the appellant, that there may have been opportunity for a third person to have put the mouse into the bottle after it had left the control of the appellant. It might even be true also, as intimated by the appellant, that the respondent himself could have placed the mouse in the bottle and then recapped it; but we hardly think that was likely, for it is doubtful if the respondent, who, according to the testimony, has a very sensitive stomach, would have been carrying with him a decomposed mouse. To suggest, though, that the respondent would be guilty of an offense of this kind, is to charge him with a wrong, both legal and moral, and the Courts, of course, do not presume that one of our citizens had committed a wrong. All the facts, and the inferences from these facts, were properly left by the presiding Judge to the jury.

"The sale of an adulterated article of food by a wholesale dealer is *prima facie* evidence of negligence, although the package was properly labeled. The violation of a pure food law by a manufacturer of food products is evidence of negligence in the preparation and sale of such food, and

proof thereof is available in a suit by a retail dealer as well as by a consumer." 26 C. J., 788.

"Negligence on the part of the manufacturer may be inferred from testimony that small pieces of glass were found imbedded in ice cream, together with evidence that the ice cream was served in the original package to a customer in a restaurant." Syllabus, *Minutilla v. Providence Ice Cream Co.* (R. I.), 144 A., 884, 63 A. L. R., 334.

The Court of Appeals of Georgia has held that proof that a bottle of coca-cola contained glass is a circumstance which the jury may consider in determining whether or not such glass was left in the bottle by the company, when it was filled, and this though proof be made by the company that the bottling was done with the latest and most improved machinery, and that careful inspection was made of every bottle sold by it. *Bradfield v. Atlanta Coca-Cola Bottling Company,* 24 Ga. App., 657, 101 S. E., 776.

Many cases in harmony with the few holdings we have here cited can be found in the following annotations: 47 A. L. R., 148, 4 A. L. R., 1559, 1 L. R. A. (N. S.), 1178.

Under the decisions of this Court, negligence may be established by not only positive evidence, but by circumstantial evidence as well. *Sanders v. Charleston & W. C. Rwy. Co.,* 147 S. C., 487, 145 S. E., 400; *Hopkins v. Southern Cotton Oil Co.,* 144 S. C., 395, 142 S. E., 615.

The trial Judge permitted the respondent to show by his witness, Sturgis, the conditions of the bottling plant of the appellant about a year and a half prior to the purchase of the bottle of coca-cola by the respondent, referred to in this case, and to testify as to lack of proper inspection of the beverages bottled at the plant. He also permitted the respondent to show by his witnesses, Elmore and Cato, conditions at the plant about a year after the purchase of the alleged unwholesome bottle of coca-cola, and the lack of proper inspection at that time; the

times to which the witnesses testified, however, being, of course, prior to the time of the trial. By his first, second, and third exceptions, the appellant contends that the admission of the testimony of these witnesses was improper and prejudicial. It is our opinion that the testimony was properly admitted. The appellant expressly alleged in his answer that for a long time he had been conducting a first-class and well-equipped bottling establishment. The testimony of a witness going to show that this was not in accord with the true facts was properly received, even if offered in advance of the appellant's evidence. The respondent had the right to attack in advance any matter in defense set up by the appellant.

"Evidence that a cattle guard was insufficient several months prior to an accident is sufficient to raise the presumption of its insufficiency at the time of the accident, in the absence of any evidence to show that its condition had been changed. *Haskings v. St. Louis, etc., R. Co.,* 58 Mo., 302." 22 C. J., 90.

"An inference that a state of affairs existed at a certain time may be reinforced by evidence that it continued to exist at a subsequent time." 22 C. J., 92.

In discussing the relevancy of evidence of the existence of a certain condition of a thing at a given time to show its prior or subsequent existence, Mr. Wigmore interestingly gives many illustrations, and quotes from the opinions of many distinguished jurists in support of this declaration by him: "This general principle that a *prior* or *subsequent* existence is evidential of a later or earlier one has been repeatedly laid down, and has even been spoken of as a presumption." 1 Wigmore on Evidence (2d Ed.), 772.

He gives what we conceive to be the proper rule for the guidance of the Courts in passing upon questions relating to evidence of this character, when he states the following: "That no fixed rule can be prescribed as to the time or the conditions within which a prior or subsequent existence is

evidential, is sufficiently illustrated by the precedents, from which it is impossible (and rightly so) to draw a general rule. They may be roughly grouped into two classes—those in which the evidence has been received without any preliminary showing as to the influential circumstances remaining the same in the interval (thus leaving it to the opponent to prove their change by way of explanation in rebuttal), and those in which such preliminary showing is required. Whether it should be required must depend entirely on the case in hand, and it is useless to look or to wish for any detailed rules." *Id., 773.*

Prof. Wigmore lays down strongly the proposition that the matter of the introduction or rejection of this kind of evidence should be left to the discretion of the trial Court. *Id., 775.* Under the rule recognized by our Court, the admission, or the refusal to admit, evidence of this nature is within the trial Court's discretion, subject to the rule that if this Court thinks there was an abuse of the discretion vested in him, and only in that event, his ruling will be disturbed. We think the evidence complained of by the appellant, under all the circumstances here, should have been admitted.

In his fourth exception, appellant charges error on the part of the trial Judge in refusing him, on the showing that he was an expert bottler, the right to testify that, in his opinion, the mouse could not go through the bottling machine and bottling operations and remain in the bottle of coca-cola. The appellant was allowed, in support of the allegations of the answer, to go fully into a description of his bottling plant and the method used in the bottling of beverages. The appellant testified that the conditions of the plant and of all the machinery were practically the same as those existing at the time the bottle of coca-cola in question in this case was bottled at his plant. The jury, under the order of the Court, was allowed to visit the plant, inspect the machinery, and see the method

that obtained in the bottling of the beverages. Even if we should concede that there was error in refusing the appellant the right to express his opinion, we could not possibly hold that the error was prejudicial, because the jury could see for themselves the exact condition at the plant, and could determine whether or not it was possible for the mouse to get into the bottle of coca-cola. Any possible injury to the appellant by failure to permit him to express his opinion was cured by the jury's inspection.

The Circuit Judge charged the jury as follows:

"Now, gentlemen of the jury, there is such a situation or relationship in business known as that of master and servant. The master directs the operations of the servant; and where that relationship exists, where the employment of the master is carried on through an agency of a servant; where the things that are to be done are done through the instrumentality of those whom we indicate as servants, there is this principle that applies: That the master is responsible for the wrongs of the servant when that servant is employed within the scope of his agency; when he is acting within the scope of his employment; a servant does a wrong, if he is acting within the scope of his employment of the master, then the master would be responsible for the acts of that servant."

In his eighth exception, appellant contends that these instructions were erroneous, in that they failed to carry with them an announcement of the principle that the master, engaged in the bottling business, was only required to use due care in the employment of his servants, and if he observed that care in such employment, the master was not liable for any negligent act of a servant. We are absolutely unable to agree with the proposition advanced by the appellant, and we know of no authority in this State for that position. The trial Judge charged correctly the principles of liability on the part of a master for the negligent acts of his servant.

The eleventh exception sets up error in the refusal to grant the appellant's motion for a new trial, on the ground that the testimony of the physicians showed that the respondent had not suffered any permanent injury and had received no ill effects from his drinking the coca-cola, except of the nausea and vomiting immediately following the drinking of the same, and that the amount of the verdict was unreasonable and unconscionable, and that in any event a new trial *nisi* should have been granted. As repeatedly stated, this Court his mighty little to do with amounts of verdicts in tort actions. The jury first finds the amount of damages. The trial Judge may reduce that amount if he thinks it is proper for him to do so. We know of no legal ground upon which we could interfere with the verdict in so far as the amount is concerned.

All the exceptions are overruled, and the judgment of this Court is that the judgment below be, and the same is hereby, affirmed.

MESSRS. JUSTICES COTHRAN, STABLER and CARTER, and MR. ACTING ASSOCIATE JUSTICE MENDEL L. SMITH concur.

MR. JUSTICE CARTER (concurring): In addition to the several grounds mentioned in the leading opinion as sustaining the trial Judge in submitting the case to the jury and in refusing to grant defendant's motion for a new trial, according to my view of the law governing the trial of the case, there is another reason appearing from the record of the case which clearly supports the action of the trial Judge. When testimony was introduced tending to show that the defendant manufactured the bottle of coca-cola in question and placed the same on the market for sale to be used as a food or drink, containing "parts of a rotten, decayed and poisonous carcass of a rat or mouse." such testimony was sufficient to take the case to the jury on the question of such alleged negligence, independent of any further showing, for placing on sale a drink containing de-

composed or putrid animal substance, such as the plaintiff described as contained in the drink in question, is a violation of the law of this State (Section 398, Vol 2, 1922 Code of South Carolina), which constitutes negligence *per se.* While I think the trial Judge properly permitted testimony to be introduced by the defendant by way of defense, to show that his plant was operated under modern methods and to show that precaution was taken to prevent any foreign substance from getting into the drinks, and also that the trial Judge properly admitted testimony offered by or on behalf of the plaintiff to controvert the contention of the defendant, still testimony to that effect by or on behalf of the plaintiff was not necessary to take the case to the jury on the question of negligence charged against the defendant in manufacturing and placing on the market the poisonous drink in question.