14726

FLOYD v. FLORENCE NEHI BOTTLING CO. *ET AL.*

(198 S. E., 161)

*Messrs. Royall & Wright* and *Wright & Burroughs,* for appellant,

*Messrs. G. Lloyd Ford* and *J. Reuben Long,* for respondent,

July 19, 1938.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

This action was brought by the respondent against Florence Nehi Bottling Company, Pee Dee Farms Corporation, and Bob Daniels, for the recovery of damages, both actual and punitive, alleged to have been suffered by him as the result of swallowing dead flies which were in a bottle of Orange Crush, a beverage manufactured and bottled by the first-named defendant, and sold to respondent by Bob Daniels, a clerk in the store conducted by Pee Dee Farms Corporation on May 23, 1936.

In the course of the trial, the Court granted a nonsuit as to Pee Dee Farms Corporation and Bob Daniels, thus eliminating them from the case.

The specifications of negligence and gross negligence against the appellant are: In failing to properly clean the bottles containing the Orange Crush; failure to properly inspect bottles before and after they were filled with this beverage; failure to keep its place of business in a sanitary and clean condition; negligence in safeguarding the bottled beverage so as to prevent their becoming contaminated with dead flies; and failure to exercise due care in its manufacture and bottling.

The appellant pleaded a general denial, and alleged the use of the most modern machinery and modern methods of manufacturing and bottling. The trial resulted in a verdict in favor of the respondent in the sum of one thousand dollars, actual damages.

In due course, the appellant made motions for a nonsuit, a directed verdict and a new trial, all of which were overruled, and the appeal involves the correctness of these rulings.

The first question raised by the appeal is: Does an ultimate consumer make out a sufficient case against the manufacturer by submitting no evidence other than testimony

as to the presence of deleterious matter discovered in the food product at the time of its consumption by the purchaser of said product?

This question as framed by the appellant assumes that the respondent introduced no evidence bearing upon the question of negligence other than that stated. We cannot join him in this assumption, because in our opinion, on the whole evidence the case was properly submitted to the jury. The respondent bases his claim upon negligence, as will be seen by reference to the specifications, and it was upon that theory, and not upon the doctrine of *res ipsa loquitur,* that the case was tried. The jury by its verdict has said that the bottling company was negligent, and to that finding we, for the present, limit this inquiry.

Before adverting to the facts, we should bear in mind certain legal principles bearing upon the issues, which this Court has already approved.

> We have held in a case of this kind that no recovery can be had except upon some negligent act or an omission of duty.

In *Delk v. Liggett & Myers Tobacco Company,* 180 S. C., 436, 186 S. E., 383, the Court said (page 386): "In *Tate v. Mauldin, supra* [157 S. C., 392, 154 S. E., 431], on this point, Mr. Justice Blease quoted with approval from the case of *Crigger v. Coca-Cola Bottling Co., supra* [132 Tenn. 545, 179 S. W., 155, L. R. A., 1916-B, 877, Ann. Cas., 1917-B, 572], as follows: 'This liability is based on an omission of duty or an act of negligence, and the way should be left open for the innocent to escape. However exacting the duty or high the degree of care to furnish pure foods, beverages, and medicines, we believe with Judge Cooley, as expressed in *Brown v. Marshall, supra* (47 Mich., 576, 11 N. W., 392, 41 Am. Rep., 728), that negligence is a necessary element in the right of action, and the better authorities have not gone so far as to dispense with actual negligence as a prerequisite to the liability. In fact, there is

no logical basis of liability for personal injury without some negligent act or omission.' "

In the *Tate case (Tate v. Mauldin,* 157 S. C., 392, 154 S. E., 431, 433), it was held that it was a question for the jury, whether a proper inspection would have disclosed the deleterious matter. The following rules were applied in the *Tate case:*

" 'A person who sells articles of food is under a legal duty to exercise reasonable care to insure their being wholesome and fit for consumption, and is liable in an action *ex delicto* on the ground of negligence for any injury resulting from their being unwholesome or unfit if he knew, or by the exercise of reasonable care could have known, their defective condition.' 26 C. J., 783.

" 'If a manufacturer of a food product disobeys the prohibition or neglects to perform the duty imposed by a pure food statute, negligence is implied from such violation or neglect, and he is liable for injuries resulting from the unwholesomeness of such food product regardless of his knowledge of its unwholesomeness.' 26 C. J., 785."

It was likewise held in the *Tate case,* and later approved in the *Delk case,* that the Pure Food and Drugs Act, Code 1932, § 1452, having been violated by the sale of unwholesome foods and beverages, such violation was *prima facie* evidence of negligence.

The same principle was announced and followed in *Culbertson v. Coca-Cola Bottling Company,* 154 S. E., 424, 157 S. C., 352, *Burnette v. Augusta Coca-Cola Bottling Co.,* 154 S. E., 645, 157 S. C., 359, and *Irick v. Peoples Baking Co.,* S. C., 196 S. E., 887.

It appears in this case, that the appellant, which operates its bottling plant in the City of Florence, sold the beverage in question to Pee Dee Farms, a corporation conducting a retail store at Gallivants Ferry, in Horry County, which in turn sold it to the respondent through its clerk, Bob Daniels. The bottled product commonly known as

Orange Crush, is composed of orange pulp, simple syrup, sugar, and carbonated water.

When the respondent bought the bottle of Orange Crush, Bob Daniels uncapped it and handed it to him, and he immediately turned the bottle up and drank about half of its contents. There is no evidence in the record to show or to suggest that the bottle had been tampered with from the time it left the bottling company unil it reached the hands of the respondent. After consuming about a half of the Orange Crush the respondent paused, and in glancing at the bottle discovered that there were two dead flies in it. This discovery at once made him violently sick. He began to regurgitate, and promptly expelled from his stomach onto the store counter all of the liquid he had swallowed from the bottle, and along with it, three dead flies. All of which, he testified, caused him pain, suffering, and humiliation. The respondent says that he continued in this nauseated condition, off and on, during all of the succeding night, which weakened and depleted his vitality. It appears that the respondent was suffering at the time from an ulcerated stomach, for which he periodically consulted his physician, but it does not appear that this condition was made any more acute by swallowing the flies and ejecting them. There was also testimony that upon examination, the bottle showed evidence of not having been properly cleansed.

The testimony of the respondent with reference to the purchase of the Orange Crush, the presence of the flies in the bottle and the respondent's immediate illness, was corroborated by Bob Daniels, the clerk, and by the respondent's companion, Hal James.

The appellant submitted evidence of the use of the most approved machinery and equipment designed to prevent the presence of every foreign substance.

The manager of the defendant bottling company testified in detail as to the methods used and followed in cleansing its bottles and filling them with the Orange Crush. In

testifying to the meticulous care exercised in the manufacturing process, this witness stated the method of inspection followed by the bottling company. According to the system followed, it was the duty of the inspector to inspect thirty bottles a minute for a period of eight hours a day, after they were filled, although there was a short cessation every two hours. Therefore this inspector, without relief, whose duty it was to see that no injurious, unwholesome, poisonous or deleterious matter was present in the bottles, would have, in the course of a day, approximately 14,400 bottles pass before his eyes at the rate of thirty per minute. While the appellant's manager testified that the bottling plant was thoroughly screened, yet he would not say that it was screened in such manner that flies did not get into the building.

In the *Tate case,* it was held that, even if there was no negligence in the actual bottling of the beverages, the evidence was sufficiently strong to go to the jury on the issue of negligence in failing to properly inspect the bottles (Coca-Cola).

There is no positive evidence in the case that anyone saw flies in the bottles during the process of manufacturing the beverage and filling the bottles, but this is not necessary to make out a case of negligent inspection and manufacture.

Under the decisions of this Court, negligence may be established not only by positive evidence, but by circumstantial evidence as well. *Tate v. Mauldin, supra; Saunders v. Charleston & W. C. Rwy. Co.,* 147 S. C., 487, 145 S. E., 400; *Hopkins v. Cotton Oil Co.,* 144 S. C., 395, 142 S. E., 615.

"The mere fact of injury does not show negligence. The burden of proof resting upon the plaintiff to establish that fact must be sustained by evidence either direct or inferential." *Weston v. Hillyer,* 160 S. C., 541, 159 S. E., 390, 391.

Under the testimony it was a question for the jury whether the bottling company exercised that degree of care necessary in its method of inspection, and whether or not it exercised the proper care in preventing flies from entering its plant. Whether there was an adequate inspection on the part of the appellant should be considered with reference to the event which actually occurred. We think from the evidence that negligence might be inferred. The jury could reasonably have inferred that the flies got into the bottle during the process of manufacture.

Even if it could be conceded in this case that it would have been proper to order a nonsuit at the close of respondent's testimony, we are of the opinion that the testimony supplied by the defense so aided the respondent in the establishment of actionable negligence that it would have been error to have directed a verdict in favor of the appellant. *Funderburk v. Powell,* 181 S. C., 412, 187 S. E., 742.

The appellant complains because the lower Court refused to direct a verdict in its favor as to punitive damages.

It will be observed that the jury rendered a verdict for actual damages alone. Under the authority of *Williams v. Greenville, S. & A. R. Co.,* 103 S. C., 321, 88 S. E., 131, this assignment of error cannot be sustained.

Finally, it is contended that the verdict is excessive. When a motion was made before the trial Judge following the rendition of the verdict, for a new trial upon the ground that the verdict was excessive, it was denied. This Court approved a much larger verdict in *Tate v. Mauldin, supra,* upon practically similar facts, and, for the reasons therein advanced, we do not think that the Circuit Judge abused his discretion here.

Judgment affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and BAKER and MR. ACTING ASSOCIATE JUSTICE L. D. LIDE concur.

Mr. Justice Carter did not participate on account of illness.