## COCA COLA BOTTLING WORKS et al. v. D. W. SELVIDGE,

Eastern Section. January 29, 1927.

Petition for Certiorari denied by Supreme Court June 11, 1927.

1. **Food. One placing sealed packages of food on the market owes a high duty to the public.**
   One who prepares and puts on the market, in bottles or sealed packages, foods, drugs, beverages, medicines, or articles inherently dangerous owes a high duty to the public, in the care and preparation of such commodities, and a liability will exist regardless of privity of contract to any one injured for a failure to property safeguard and perform that duty.

2. **Food. There must be negligence before there is a breach of the producers' duty.**
   However exacting the duty or high the degree of care to furnish pure food, beverages and medicines, negligence is a necessary element in the right of action.

3. **Negligence. Evidence. Glass in a bottle of coca cola held not make a prima-facie case of negligence.**
   Where the evidence showed that the bottle of coca cola which plaintiff drank had glass in it and defendant's evidence showed that the bottle

had been cleansed by a method so that no reasonable mind would differ upon the proposition that bottles going through this cleansing process would not contain glass, held that the fact that glass was in the bottle would not make a prima-facie case of negligence against the defendant.

4. **Trial.** **It is the duty of the court to direct a verdict when reasonable minds cannot differ upon the evidence offered.**
   When the evidence shown is such that reasonable minds cannot differ, there is then no question for the jury and the court should direct a verdict.

Appeal in Error from Circuit Court Hamilton County; Hon. Oscar Yarnell, Judge.

Reversed.

C. G. Cooke and R. B. Cooke, of Chattanooga, for plaintiff in error.

Tatum & Tatum, P. H. Thach and Sam H. Ford, of Chattanooga, for defendant in error.

PORTRUM, J.   The defendant in error, D. W. Selvidge, claims to have swallowed a mouthful of fine particles of glass while drinking a bottle of coca cola, the glass being in the bottle, and as he gulped down the last of the contents of the bottle, the glass was precipitated down his throat, when by a process of gagging and spitting he was able to expel most of the glass, but swallowed some; and in the maelstrom taking place in his throat when he attempted and did arrest the passage of the glass, his throat was cut and injured, according to his testimony.   This happened on the 23rd day of May, 1924, when the bottle of coca cola was purchased from the retail store of W. J. Kelly & Son.

He has been under the care of a physician from that day since, and the next day after drinking the coca cola he consulted a lawyer; and on the 31st day of May, 1924, he filed suit for $5000 damages. This suit was later dismissed for some reason, and a new suit, upon the same facts, was filed which is the case at bar.

The negligence laid in the declaration, and upon which the suit is predicated is that the defendant below, Coca Cola Bottling Works, was negligent in the bottling of the coca cola, and by reason of which particles of glass remained in the bottle purchased by Selvidge, and when he drank the contents he swallowed some of the glass, causing the injury.   He testified that the bottle was hazy and dirty looking in color, and that the store was dark and he was unable to discover the glass in the bottle because of these facts.   Mr. Selvidge's injuries resulted in a swollen stomach and an ulcerated intestine, as shown by an X-ray taken one year after the accident.   He also states that he suffered pain in the stomach immediately after he swallowed the glass.

The witness, J. L. Kelly, testified that he was one of the firm of the retail store where the coca cola was purchased, and that he sold

Selvidge the bottle, which he took from his ice box. He said he opened the bottle and it spewed, as bottles ordinarily do. He said he returned to his trade. A few minutes later his attention was attracted by the conduct of Selvidge, who appeared excited, and who told him he had swallowed glass. Dr. E. L. Boone saw Selvidge shortly after he claimed he had swallowed the glass, and he advised him to eat bananas and potatoes, and gave him some bismuth. Dr. Jas. Holman, a witness for the defendant below, testified that he knew Selvidge for the past fifteen years, and that he could not see very much difference in his physical condition during this time. Selvidge came to his room and he made an examination and was unable to find any injury of the throat. He was shown to be a throat specialist.

The company introduced their General Manager, Mr. R. A. Ferrell, who had held this position with the company for about six years. He testified that the company used the most modern machinery to insure cleanliness of the products. He then detailed the process as follows:

"The bottles are first put into the soaker, and are fed on an endless chain which pulls the bottle through the soaker. The soaker is filled with a hot caustic solution and each bottle goes over thirty-six jets of this hot caustic solution which is shot into the bottles under pressure of eighteen or twenty pounds; and while the bottles are inverted. Then they get six rinsings of fresh water. Next they are automatically dumped on a steam conveyor which carries them on to the syruper, and from the syruper they are fed to the filler, and from the filler to the crowner and from the crowner they are carried off on a belt for inspection; and when they are inspected they are put in cases and stacked ready for delivery."

The bottles are passed by a chain belt before the man and between him and a high powered electric light, and any foreign object appearing in a bottle can be readily seen when the bottle passes in front of the bright light. This method is shown to be the highest state of the art of bottling.

The syrup is strained through four plies of cheese cloth and two plies of very fine copper wire. The water used comes from the city mains and is filtered, and is the same as the water used by the residents of Chattanooga. The bottle in question is shown to have gone through this process, and was packed and delivered to the retailer.

The company also shows that the crown can be removed and replaced by hand, and that hand crowners can be purchased at a small sum in the city of Chattanooga. And that when the cap is removed and replaced within a few hours, the bottle will retain the gas, and upon the removal later of the crown, the contents will spew. It is further shown that anyone disposed to do so could remove the crown

and place the foreign contents in the bottle after it had left the plant and while it is in the hands of the retailer. From this proof the defendant below advanced three propositions, as follows:

1st. The absence of any negligence on the part of the Coca Cola Works.

2nd. The opportunity of a third person to put foreign matter in the bottle after it reached the hands of the retailer.

3rd. The possibility of the defendant himself placing the glass in the bottle or in his mouth.

It is insisted, upon this state of facts, and in the absence of any direct evidence of negligence, that the jury will not be permitted to conjecture or guess, and it is impossible for it to find negligence on the part of the company without doing so. The rules of liability in cases of bottlers of beverages for human consumption are laid down in the case of Crigger v. Coca Cola Bottling Company, 132 Tenn., 545, 179 S. W., 155, the court says:

"From a careful consideration of the subject, and after mature thought, we are of opinion as follows:

1. "That one who prepares and puts on the market, in bottles or sealed packages, foods, drugs, beverages, medicines, or articles inherently dangerous owes a high duty to the public, in the care and preparation of such commodities, and that a liability will exist regardless of privity of contract to any one injured for a failure to properly safeguard and perform that duty.

2. "This liability is based on an omission of duty or an act of negligence, and the way should be left open for the innocent to escape. However exacting the duty or high the degree of care to furnish pure foods, beverages, and medicines, we believe with Judge Cooley, as expressed in Brown v. Marshall, supra, that negligence is a necessary element in the right of action, and the better authorities have not gone so far as to dispense with actual negligence as a prerequisite to the liability. In fact, there is no logical basis of liability for personal injury without some negligence."

Under the facts and rules of law as above stated, the plaintiff in error, Coca Cola Bottling Works, makes the question under its assignment for a directed verdict, that the trial judge erred in permitting the judgment against it of $2500 to stand. The defendant in error, D. W. Selvidge, cites the case of Davis v. Van Camp Packing Company, 17 A. L. R., 649, 176 N. W., 389, as authority for the proposition that proof that the coca cola bottle contained glass made out a prima-facie case of negligence, and it is then insisted that it was a question for the jury, whether or not the defendant had overcome the prima-facie case, and that the case of Davis v. Van Camp Packing Company, supra, supports both propositions. That was a case in which the packer had sold a can of pork and beans which was shown

in the case to be deleterious. The court held that the condition of the beans made out a prima-facie case because it was impossible for the plaintiff to show the conditions of the factory while the facts were in the mind of the defendant, and it was not a hardship for him to supply the fact. The holding in that case was based first upon an implied warranty, which is not approved by the Tennessee cases, and second upon negligence.

In discussing the question of negligence, the court held that proof introduced by the defendant, showing the conditions surrounding the packing of the food, made a case for the jury, for the following reasons:

It was shown that the employees handled the bacon and the bacon could become contaminated in this matter; that in every case co-ordination between the employees was not had, and by reason of which there was opportunity for the food to become infected; and that some batches of bacon were not inspected, and because of this the food may have become contaminated; and certain batches of food had theretofore been condemned as deleterious and unfit for human food. The court held that by reason of these avenues for contamination of the food, it was a question for the jury to determine whether or not the company had overcome the prima-facie case made by the plaintiff's proof.

The case before us presents no avenue whereby the glass could remain in the bottle after going through the process as shown in this case, and it is shown that this identical bottle went through this process. And the plaintiff did not attempt to contradict the method used by the company in cleansing its bottles. We hold that reasonable minds will not differ upon the proposition that bottles going through this cleansing process will not contain adhered glass after the rinsing. There was nothing in the bottle but syrup and glass. Then to believe that this amount of glass and syrup would adhere to the bottle after passing through the cleansing process above detailed is equivalent to believing that water will not dissolve sugar and that the law of gravitation has lost its force. Counsel for the defendant in error state that notwithstanding the process used, the glass must have, in some way adhered to the bottle, and it was a question for the jury to say whether or not this was a fact. We think this condition highly improbable if not impossible, and one that reasonable minds will agree is not true.

And it appearing from the proof that the glass may have gotten in the bottle by the act of the third person or by the act of the defendant in error himself, then for the jury to hold that it was an act of negligence on the part of the plaintiff in error, the act of the jury is then based upon a conjecture. The conclusion reached is not inconsistent with either of the theories advanced by the com-

pany. We are not unmindful of the high degree of care required of bottling companies, but as stated, "The way should be left open for the innocent to escape."

We conclude the lower court was in error in not sustaining a motion for a directed verdict. The case is reversed and dismissed at the cost of the defendant in error.

Snodgrass and Thompson, JJ., concur.