S. E. YATES, Plaintiff in Error, v. COCA COLA BOTTLING WORKS, Defendant in Error.

Middle Section. July 2, 1931.

Petition for Certiorari denied by Supreme Court, January 23, 1932.

8

William A. Guild, of Nashville, for plaintiff in error, Yates.

Avery Handly, of Nashville, for defendant in error, Coca Cola Bottling Works.

CROWNOVER, J. This was an action for damages for illness suffered by the plaintiff as the result of drinking some of the contents of a bottle of coca cola containing a partially decomposed fly or bug and some dirt or "grit," which bottle of coca cola had been bottled by the defendant company and sold to a lunch wagon, from which plaintiff purchased it.

The action was instituted in a Justice of the Peace Court where judgment for $200 was rendered in favor of the plaintiff. From which judgment defendant appealed to the Circuit Court, where the case was tried by the judge without a jury. The judge found in favor of the defendant and plaintiff's suit was dismissed.

The plaintiff's motion for a new trial having been overruled, he has appealed in error to this court and has assigned one error, that there is no evidence to sustain the judgment of the court.

S. E. Yates, a railroad fireman, on December 6, 1930, went into the lunch wagon of O. B. Martin, at Flat Rock, in Davidson County, and purchased a bottle of coca cola. The proprietor took a bottle from his ice box, removed the cap, and handed it to him. He began to drink from the bottle. When he had drunk about one-third of the contents he felt something "gritty" in his mouth and throat, with a bad taste. He put a broom straw into the bottle containing the rest of the coca cola and, in Mr. Martin's presence, took out what appeared to be the remains of a bug or fly, and also some dirt. He put said substances back into the bottle and took the bottle with him. He was made sick by drinking some of the coca cola and was sick for several days. He was able to go out on his run a day or two afterwards, which was the first call he had had since drinking the coca cola, and did not lose any time from his work.

O. B. Martin, proprietor of the lunch wagon, testified that the bottle had been delivered to him by the defendant Coca Cola Bottling Works' truck; that the bottle and its contents were in the same condition when he sold it to Yates as when defendant's truck delivered it to him.

The manager of the Coca Cola Bottling Works testified that this plant has the most up-to-date machinery known to the art of bottling; that all the bottles which are filled with coca cola are first put through a cleansing process. They are placed on a con-

veyor, upside down, and are run through the soaking machine, each bottle staying in hot caustic soda solution at a heat of 140 degrees Fahrenheit, which kills all germs and washes out the bottles. They stay in the solution for thirty minutes, and then pass on a chain, while inverted, over thirty-six jets of hot caustic solution under a pressure of twenty pounds, then pass on this conveyor chain, while inverted, and are rinsed six separate times in fresh water. They then pass on the conveyor in front of high powered lights where two inspectors see the bottles in front of the lights. The bottles are then mechanically turned up and pass on to the syruper, then to the filler for carbonated water, and then to the crowning machine where they are capped, and are then carried off by the belt for another inspection. The syrup is placed in a glass lined copper tank which is cleaned and inspected daily, and it passes through several strainers of close-meshed copper wire, 1000 wires to the square inch, to the syruper.

The manager testified that these bottles are put through the cleaning process and inspected by colored girls, who are careful and efficient; that the cleaning process will remove all particles of foreign substance that may be in the bottle less than the size of the inside neck of the bottle, and that the substance shown to be in the bottle now in controversy is less in size than the neck of the bottle, and in going through the process of cleaning and filling such substances would have been washed out; that all bottles cleansed and refilled have to go through this mechanical process, and the foreign substance, as shown in the bottle exhibited, could not possibly have remained in the bottle.

On cross-examination he testified that the company purchases old, dirty bottles, which they wash and use; that the bottles are inspected by colored girls who are paid small but fair wages.

There is only one assignment of error, that there is no evidence to sustain the judgment of the court. There may be some doubt as to whether the facts of this case could be reviewed under this assignment of error, as there is some evidence to sustain the judgment, and an assignment of error on one proposition raises no question as to the correctness of another, and the party will not be allowed to argue another question not raised by the assignment of error. 3 C. J., 1363, sec. 1507; 1373, sec. 1522; Buckingham v. Estes, 128 Fed., 584. In other words, can we consider the preponderance of evidence under an assignment of error to the effect that there is no evidence to support the judgment? In view of the Act of 1929, chapter 94, and of the further fact that the two questions are closely allied, we are of the opinion that we can consider the preponderance of the evidence under an assignment that there is no evidence to support the judgment in cases of this kind. It was held

in the case of Cooper v. The State, 123 Tenn., 37, 138 S. W., 826, that an assignment in a criminal case that "the verdict is not warranted by the evidence" is not good in form; but the court, upon the assignment thus framed, examined the facts of the case.

After a careful examination of the record we are of the opinion that the judgment of the trial court should be affirmed and that the assignment of error must be overruled, for the reason that under chapter 94 of the Acts of 1929 the case is tried de novo, and there is a presumption of the correctness of the judgment of the trial court where the material evidence is nearly evenly balanced.

In this case it was shown that there were parts of a decomposed fly or bug and other foreign substance in the bottle of coca cola when purchased by the plaintiff from Martin, who operated a lunch wagon, and that Martin had purchased the coca cola from the defendant two or three days prior thereto, and that it was in the same condition as when delivered to him by the driver of the defendant's truck. On the other hand, it is insisted by the defendant that the fly or bug and other foreign substance would have been removed by the hot caustic soda in the cleansing process hereinabove detailed, and that the defendant was not responsible for negligence of other parties after it was delivered to a purchaser. In other words, it insists that this cleansing process was so complete that it came directly within the rule announced in the cases of Bottling Works v. Selvidge, 4 Tenn. App., 558; and Crigger v. Coca Cola Bottling Co., 132 Tenn., 545, 179 S. W., 155.

The doctrine of res ipsa loquitur does not apply to cases of this kind. Bell v. Bowers Stores, 3 Tenn. App., 590. But where it appears from the evidence that foreign matter was in a bottle of coca cola when it left the custody of the defendant, it was held, in view of the high duty resting on the defendant and in the absence of other explanation, within the province of the jury (or the court sitting without a jury) to infer that the defendant was negligent in placing an impure beverage on the market, which evidence may be sufficient to carry the case to the jury. Coca Cola Bottling Works v. Lewis, 9 Tenn. App., 485; Coca Cola Bottling Works, Plaintiff in Error, v. Anna May Kennedy, Defendant in Error, 13 Tenn. App., 199.

In other words, the doctrine of res ipsa loquitur does not apply in cases of this kind but the burden of proof is on the plaintiff to show negligence, which may be shown by circumstantial evidence.

The proposition of implied warranty under the Uniform Sales Act does not strengthen the plaintiff's case. Our Supreme Court held in two cases that the defendant's liability to the ultimate consumer may be placed on either of two grounds: First, on an im-

plied warranty. Second, on the "duty one owes to the public not to put out articles to be sold upon the markets for use injurious in their nature, of which the general public have not means of inspection to protect themselves. This duty has been applied to manufacturers of drugs, foods, beverages, poisons, and other things inherently dangerous." Boyd v. Coca Cola Bottling Works, 132 Tenn., 23, 177 S. W., 80; Crigger v. Coca Cola Bottling Works, supra.

It results that as the evidence is nearly evenly balanced we are bound by the judgment of the lower court. The judgment of the lower court dismissing the bill, is affirmed, and the cost of the cause including the cost of the appeal is adjudged against the plaintiff in error, S. E. Yates.

Faw, P. J., and DeWitt, J., concur.