MERRIMAN v. COCA COLA BOTTLING CO. OF McMINNVILLE, TENN.—68 S. W. (2d) 149.

Middle Section.  July 29, 1933.

Petition for Certiorari denied by Supreme Court, February 24, 1934.

Robert S. Brady, of Spencer, and Turner & Haston, of McMinnville, for plaintiff in error.

Mercer & Johnson, of McMinnville, for defendant in error.

DeWITT, J. This action was brought to recover damages for personal injuries alleged to have been sustained from swallowing pieces of glass in a bottle of coca cola while the liquid was being drunk from the bottle by the plaintiff. Upon a trial the jury returned a verdict for the plaintiff for $1,000. A motion for a directed verdict for the defendant had been made and overruled at the close of all the evidence. In its motion for a new trial the defendant assigned as error this action of the court. On December 10, 1932, the court sustained this motion, set aside the verdict for the plaintiff, and dismissed the suit, holding that the motion for peremptory instructions should have been sustained. Without then entering a motion for a new trial, the plaintiff merely excepted to the action of the court, prayed an appeal in error to this court, which was granted, upon her executing a bond or taking the oath in forma pauperis and filing a bill of exceptions within thirty days from said date. On December 15, 1932, the plaintiff filed said oath for appeal in error to this court. On December 22, 1932, the plaintiff filed a bill of exceptions, but it was not then signed by the trial judge. On December 29, 1932, the plaintiff moved to set aside the former order granting the appeal in error, and to permit the plain-

tiff to withdraw the oath and to file a motion for a new trial. This motion was granted, and the court entered an order vacating the former order; it being recited that said order was entered upon the minutes without noting therein the plaintiff's intention to make a motion for a new trial, that this matter was called to the attention of the court on December 22, 1932, but not in open court, but after said order had been entered; and further recited: "And Court still being in session, and said motion being entered and filed within thirty days from the entry of the former order, and before the signing of the bill of exceptions, the Court is of the opinion that the former order should be vacated, set aside and for nothing held, to the extent hereinabove set out, but in no other respect." To this action of the court, taken on December 29, 1932, the defendant excepted. Thereupon the court overruled the motion for a new trial thus made by the plaintiff. The plaintiff excepted, prayed an appeal in error to this court, which was granted. On January 4, 1933, she filed another oath for appeal in error. The bill of exceptions, signed by the circuit judge, was refiled on January 2, 1933. The transcript of the record was filed in this court on February 17, 1933.

The defendant in error has entered in this court a motion "to dismiss the appeal in error and affirm the judgment," on the grounds that the circuit court was without authority or jurisdiction to make the order in the cause on December 29, 1932, vacating the former judgment, and that the plaintiff could not prosecute an appeal in error because of her failure to move for a new trial upon the dismissal of the suit on December 22d. Badger v. Tenn. Electric Power Co., 12 Tenn. App., 361.

Where a simple appeal is prayed for and granted from a judgment of a court of law, it must be construed to mean an appeal in error, which does not vacate the judgment below, but merely suspends it to the final judgment in the appellate court. Spalding v. Kincaid, 1 Shan. Cas., 31. A simple appeal annuls the judgment of the inferior court, while an appeal in the nature of a writ of error only suspends the judgment below until final judgment in the appellate court. Akers v. Akers, 16 Lea, 7, 57 Am. Rep., 207. The mere filing of the oath for appeal in error on December 15th did not take the cause out of the jurisdiction of the court, as it was done within the period of thirty days allowed. The bill of exceptions as filed on December 22d was a nullity because it had not been signed by the trial judge. Heald v. Wallace, 109 Tenn., 346, 71 S. W., 80. On December 29th the cause was still within the control of the court and the trial judge did not abuse his discretion when he set aside the former judgment to the extent of allowing the plaintiff to enter a motion for a new trial. When

this motion was heard and overruled, the court did not grant any specific time for taking the oath and filing the bill of exceptions, but these things were done within a few days and within term time.

In Legere v. State, 111 Tenn., 368, 77 S. W., 1059, 102 Am. St. Rep., 781, it was held that it was error for the trial judge to refuse to entertain the motion for a new trial upon any ground of misconduct of the jury, and of the officer in charge thereof, made immediately after the verdict of the jury was rendered. Judgment had been entered and sentence passed upon the defendant and an appeal had been granted. The defendant's counsel was refused a request for time before the adjournment of the court in which to prepare affidavits laying the ground for the motion. It was held that the whole matter was still in the breast of the court, and the proper practice would have been for the court to set aside the order granting the appeal and to give time to counsel to present their affidavits showing, if they could, the misconduct of the jury. In our opinion, this rule of practice is controlling as to the case before us, and the motion of the defendant in error in this cause is overruled. See, also, 3 C. J., 1254.

On the evening of November 18, 1931, the plaintiff below, Mrs. Notie Merriman, entered the building in Spencer, Tennessee, occupied by Mr. and Mrs. C. E. Simmons as a grocery and restaurant. She ordered a ham sandwich and a bottle of coca cola. She was waited on by Mrs. Simmons. Mrs. Simmons testified that she took a bottle of coca cola from the frigidaire and furnished it to Mrs. Merriman; and it appears without dispute that this bottle of coca cola was purchased from the defendant company, which owns and operates a plant for bottling and selling coca cola at McMinnville. Immediately after purchasing the coca cola, and after the bottle was opened by Mrs. Simmons, Mrs. Merriman began to drink it, taking first one swallow of it and then eating of the sandwich and then taking another swallow of the coca cola. She became immediately aware of the presence in her mouth of some gritty substance which turned out to be small particles of glass. She testified that she swallowed some of this glass and endured much suffering and ill health as a result of it. The bottle of coca cola was immediately kept by Mr. and Mrs. Simmons with the cap tight on and it is exhibited with this record. The bottle contains small pieces of glass visible from the outside of the bottle.

Mr. and Mrs. Simmons testified that this bottle was not opened before that day, was not tampered with before it was opened for Mrs. Merriman, and that one or the other of them was in the restaurant all the time during business hours. They did not know just when this bottle of coca cola had been delivered to them, although Mr. Simmons admitted that it might have been in their possession for two weeks at the farthest, or might have been delivered to them a day or two be-

fore. Mrs. Simmons testified that when she opened the bottle of coca cola the mouth of it was left smooth and was not broken. It appears that there were three rooms occupied by Mr. and Mrs. Simmons for this business purpose; that the east room was used for the grocery, a part of the west room for the restaurant, containing tables. Mr. Simmons testified that at that time the coca cola was kept under a counter and near the table on a shelf. He was asked whether or not when he was away and some one wanted a sandwich his wife would have to leave the customer in this room and go back in another room to prepare the sandwich; or he when his wife was not present had gone into the other room to prepare sandwiches and had left people at the table, and he answered that he would not say whether such persons so left in the restaurant would have an opportunity to take a cap off of a coca cola bottle. He further testified that there was no opportunity to have placed anything in the bottle in question after it was delivered to his place. Mrs. Simmons said that she did not know whether or not the bottle had been altered or tampered with after it got to their place of business. She admitted that sometimes they kept bottles of coca cola on shelves near where the table stood. She testified that she frequently would go into the other room to prepare sandwiches, remaining there some three or four minutes at a time, leaving several people sitting at the tables. but that while she was thus preparing sandwiches she could see behind the counters, but could not see the people sitting at the tables. Mrs. Merriman was asked if she put the glass in the bottle and she said that she did not; that she had no desire to commit suicide; and that she did not think that she could have put the glass in the bottle after it was uncapped. It is insisted in support of the judgment that from this testimony it could be inferred that there was opportunity for a third person to have placed the glass in the bottle of coca cola after it reached this place of business, and there was a possibility of the plaintiff herself placing the glass in the bottle.

The defendant introduced as witnesses the manager and two other of its employees, who did the actual bottling at the coca cola plant. The gravamen of their testimony was that it was impossible for glass or other foreign substances to remain in a bottle of coca cola, including this bottle, after going through the process of cleansing as minutely described by them, and that therefore the case presented no avenue whereby the glass or other foreign substance could remain in the bottle in question after going through the process which they described. It is deemed proper to incorporate in this opinion this description of the process of cleansing. The manager, Mr. Tolbert, described this process as follows:

"In the first place, that Miller soaker is one of the three bottle washers that has passed the forty-eight health boards of the United States as being absolutely sanitary, or I will say the one bottle washer, for I don't know about the others. Nothing foreign or filthy can stay in a bottle that goes through this machine. This machine will not take cement or grease or oil sticking to the bottle out, but will take any other foreign matter out except paper, peanut hulls and clothes pins when put in the bottle opposite side down, for they will spring out and be larger in the bottle than the opening in the bottle, but it will take everything loose out. We never fill a bottle without first thoroughly cleansing it, no matter how clean the bottle looks, not so much for taking foreign matter out but the Coca-Cola people have made it a point for thirty-five years that they bill out sanitary packages and in order to be sanitary, the bottles have to be thoroughly sterilized and we fix it so you can't get an unsterilized bottle from our plant. If you come down to the plant and drink a coca cola and set the bottle down, that bottle will be washed again before it is refilled because may be some germ will get on the bottle, and, of course the bottle may look clean but we never take a chance but are sure that it is clean. When we put a bottle in the soaker, the bottle goes in the soaker on an endless chain something like this (indicating with bottle inverted) now the bottle can't go in the cups with the crown on because the place is hardly large enough for a crown to go in and it goes in this way, inverted (indicating with bottle inverted), then it moves first over a jet of water, pure water just like we drink out of hydrants, the pressure runs from 60 to 70 pounds, it depends on how full the stand-pipe is, this jet comes up in a whirling motion and absolutely washes everything in the bottle out. I have tried it with glass time and again. This one jet takes it out. It stays over this jet between five and seven seconds, as near as I could tell it, I timed it with a watch that didn't have a stop hand. It takes everything out. I have tried it with peas and it takes that out. Then it moves into the soaker proper. Here the water is forced through the jets with a pump into the bottle. This has a pressure of about from twenty-five to thirty pounds. I have never caught it under twenty-five and have frequently caught it over thirty. All of these jets have a whirling motion. The bottle is upside down and is being rinsed also from the top and in a 4% solution of alkali and in order to be sanitary we have to have the water at least 100 temperature. We always run as near 100 as we can and we never start until it is 105 and we are careful not to get over that because if it runs over that, when it hits the cold water we have just got a broken bottle, and we watch that very closely because we have to have it sanitary and at the same time we don't want to have any broken bottles. It stays on this jet one

minute. This 4% alkali is strong enough to eat flesh. One day I found a dead mouse and put it in a bottle and tied a string around the bottle, and run it through this soaker and when the bottle came out there was no sign of a mouse there. Now, this was a pretty good sized mouse and was forced in the bottle so tight that I doubt if it could come out if it hadn't been eaten by this alkali. These bottles ride this endless chain and go over five jets and each bottle stays over each jet just about a minute, or little more. and that makes it in there about five minutes.''

The two other employees fully corroborated the manager in his description of this process. Mr. Tolbert further testified that this process was employed by the defendant in treating each and every bottle of coca cola, including the bottle of coca cola in question in this cause; that the defendant had never put out a bottle of coca cola that had not gone through that process; that the machine was set so that it was impossible to get a bottle and put it in that machine that did not go through the soaker and had been thoroughly cleansed. He further said that he had frequently put glass in coca cola bottles to test the effect of the cleansing, but he had never found glass after it had gone over the first jet and that the glass came out every time. He said that his company had given away all over .its territory over three thousand bottle openers and that any one could take the cap off of a coca cola bottle and place a foreign substance in it and put the cap back on. It was submitted that the company gathers up bottles that had been used over the country and brings them back to its plant to be refilled after cleaning. He testified that the machinery in question came nearer being perfect than any he had seen, but he did not suppose that there was any that was perfect.

An examination of the bottle containing the coca cola in question fails to show that it contained any other substance than the coca cola and the small particles of glass.

In Crigger v. Coca Cola Bottling Company, 132 Tenn., 545, 179 S. W., 155, 157, L. R. A., 1915B, 877, Ann. Cas., 1917B, 572, the court says:

''From a careful consideration of the subject, and after mature thought, we are of opinion as follows:

''1. That one who prepares and puts on the market, in bottles or sealed packages, foods, drugs, beverages, medicines, or articles inherently dangerous owes a high duty to the public, in the care and preparation of such commodities, and that a liability will exist regardless of privity of contract to any one injured for a failure to properly safeguard and perform that duty.

''2. This liability is based on an omission of duty or an act of negligence, and the way should be left open for the innocent to escape.

440

However exacting the duty or high the degree of care to furnish pure foods, beverages, and medicines, we believe with Judge Cooley, as expressed in Brown v. Marshall [47 Mich., 576, 11 N. W., 392, 41 Am. Rep., 728], supra, that negligence is a necessary element in the right of action, and the better authorities have not gone so far as to dispense with actual negligence as a prerequisite to the liability. In fact, there is no logical basis of liability for personal injury without some negligent act or omission.''

Therefore, to sustain a recovery in such a case, there must be some evidence of negligence, having in view the ''high duty to the public.''

In Yates v. Coca Cola Bottling Works, 14 Tenn. App., 7, it is said:

''The doctrine of res ipsa loquitur does not apply to cases of this kind. Bell v. Bowers Stores, 3 Tenn. App., 590. But where it appears from the evidence that foreign matter was in a bottle of coca cola when it left the custody of the defendant, it was held, in view of the high duty resting on the defendant and in the absence of other explanation, within the province of the jury (or the court sitting without a jury) to infer that the defendant was negligent in placing an impure beverage on the market, which evidence may be sufficient to carry the case to the jury. Coca Cola Bottling Works v. Lewis, 9 Tenn. App., 485; Coca Cola Bottling Works, Plaintiff in Error, v. Anna May Kennedy, Defendant in Error, 13 Tenn. App., 199.

''In other words, the doctrine of res ipsa loquitur does not apply in cases of this kind but the burden of proof is on the plaintiff to show negligence, which may be shown by circumstantial evidence.''

Under this rule the mere presence of glass in the bottle is not itself evidence of negligence on the part of the defendant. But the question is, whether or not the jury could reasonably have inferred, from this fact and additional evidence, that the glass was in the bottle when it was delivered by the defendant to the dealer. This evidence has been hereinbefore stated. Does it, when looked to alone, tend substantially to show that neither the plaintiff nor any third person placed the glass in the bottle? Does any evidence of opportunity to do this tend substantially to leave this question to mere guess or conjecture?

The trial judge, in sustaining the motion for a directed verdict, stated that he reluctantly felt bound by the decision of this court, Eastern Section (certiorari denied by the Supreme Court), in Coca Cola Bottling Works v. Selvidge, 4 Tenn. App., 558. In that case, upon undisputed evidence, as in this case, of the high degree of care exercised, the thorough method used by the bottling company, in cleansing its bottles, and from the absence of direct evidence of negligence, and from evidence that glass might have gotten in the bottle by the act of a third person or by the act of the plaintiff himself, it

was held that for the jury to hold that it was due to negligence of the defendant would be a finding based upon a conjecture; that such conclusion would not be inconsistent with either of the theories advanced by the company. The court said in conclusion: "We are not unmindful of the high degree of care required of bottling companies, but as stated (in Crigger v. Coca Cola Bottling Company, supra), 'The way should be left open for the innocent to escape.' "

In Roddy Mfg. Co. v. Cox, 7 Tenn. App., 147, the bottle which the plaintiff bought, and which contained a dead mouse, had been filled by the defendant not more than three days before, and it had been in the defendant's possession until just a few minutes before the dealer, to whom it had just been delivered, sold it to the plaintiff, who drank the coca cola in his presence without examining it. A judgment rendered by the circuit judge in favor of the plaintiff was affirmed. It is said in the opinion:

"While it is within the realm of possibility that some malicious person may have put the mouse in the bottle while it was in defendant's possession or during the short interval of time between its delivery by defendant to Good and Good's sale of it to plaintiff, yet this is so highly improbable that we think the court was fully justified in disregarding it. We think the court was fully justified in reaching the conclusion that the dead mouse was in the bottle when it was put into the machine, that the machine did not remove it and that the defendant's employees were negligent in not discovering it on the two occasions or opportunities which they had of inspecting the bottle. In fact, this is the only conclusion that can be reached from the evidence, unless it is concluded that plaintiff or Good or both of them testified falsely. And there is nothing in the record which tends to discredit their testimony."

In Coca Cola Bottling Works v. Lewis, 9 Tenn. App., 485, the plaintiff suffered from drinking coca cola containing "some dirty, filthy and deleterious substance" from a bottle which had but recently been delivered by the bottling company to the dealer from whom it was purchased; and upon such delivery to the dealer it was placed in an ice box, kept there without being opened or tampered with until it was handed to the plaintiff. It was shown by undisputed proof (as in the instant case) that the metal caps on the coca cola bottles could easily be removed and put back without changing the external appearance or other condition of the bottle or cap. This court said: "There was evidence from which the jury could find that the foreign substance which made plaintiff sick was not put in the bottle after it was delivered by defendant's agent, Redmond, to Dugan, the grocer, who sold it to the plaintiff. It thus appearing that the foreign matter was in the bottle when it left the custody of defendant, it was, in view

of 'the high duty resting on the defendant,' and in the absence of other explanation, within the province of the jury to infer that defendant was negligent in placing on the market a bottle thus contaminated.''

In Coca Cola Bottling Works v. Kennedy, 13 Tenn. App., 199, the plaintiff drank coca cola containing a partially decomposed bug from a bottle which she had purchased from a drug store to which it had been delivered by the defendant. First it had been kept for three or four days in a case of such bottles in the rear of the store behind the prescription case, then placed in a frigidaire, then taken out and sold. It appeared that only the employees of the drug store had access to it. There was evidence that such bottle could not be recapped by hand so as to retain its carbonation. There was also evidence that at the bottling plant the bottles were inspected by colored girls; that at first inspection the bottles, while empty, were passed in front of an electric light at the rate of 103 bottles each minute; that there was another inspection after the bottles were filled; that the girls looking at these bottles were seated near a window overlooking the street; and that there was some danger of their attention being distracted. There was evidence that the cleansing process might not remove bugs. The decision was that there was sufficient evidence for the issue as to the defendant's negligence to be submitted to the jury.

The case of Yates v. Coca Cola Bottling Works, 14 Tenn. App., 7, was heard by the circuit judge, without the intervention of a jury, decided by him for the defendant, and his decision was affirmed by this court applying the rule of chapter 94 of the Public Acts of 1929; the evidence being so nearly evenly balanced that the presumption of correctness of the judgment below controlled. The plaintiff in that case testified that he drank coca cola containing the remains of a fly or bug and some dirt from a bottle which he had just purchased from a dealer who had purchased it from the defendant company and had kept it in an ice box in the same condition as when it was delivered to him.

In each of these cases the writ of certiorari was denied by the Supreme Court; and in each of them the process of cleansing, filling, and inspecting the bottles was described in detail in the evidence, as in the instant case. The contention was made in each case that under this process it was impossible for the deleterious matter to have been left in the bottle by the defendant.

The case of Boyd v. Coca Cola Bottling Works, 132 Tenn., 23, 177 S. W., 80, turned upon the question of liability of the bottling company to the concumer; the bottle having been purchased from an intermediate dealer. Such liability was sustained as a rule of law. There was a cigar stub in the bottle of coca cola purchased by Mrs.

Boyd. The circuit judge sustained a motion of the defendant for peremptory instructions and dismissed the suit. The judgment was reversed and the cause was remanded for a trial before a jury.

In Crigger v. Coca Cola Bottling Company, supra, the plaintiff, in drinking from a bottle of coca cola, took into his mouth, and partially swallowed, a decomposed mouse, which caused him to become very sick, and he sued the bottling company for damages. The process used by the company was shown to be fully equal to the best. Under a charge that if the defendant was free from negligence there was no liability, the jury found in favor of the defendant. In the Supreme Court it was contended that there was an implied warranty on the part of the defendant company, but this contention was not sustained, and the rules of liability were declared as quoted in a previous part of this opinion. Concluding its opinion, the Supreme Court said:

"In the present case, the mouse may have gotten into the bottle by some unavoidable accident, but proper inspection should have disclosed the fact, and if in the light of the finding by the jury it were fairly inferable that the mouse was bottled up at the Bottling Company plant, we would consider it our duty to reverse the case, because of the high duty resting on the defendant. But the jury was told to inquire whether the mouse was in the bottle when it left the hands of this company, and, if so, whether its presence there was due to the negligence of the company. The court suggested to the jury the theory of the defendant that there was opportunity for malevolent persons to open this bottle and put the mouse into it before or after it left the factory, and they should use their common sense as men in deciding the issue. In view of the extraordinary care shown to exist at the bottling plant and the verdict of the jury, it may be that this thing occurred without the fault of the defendant. There are sufficient inferences that may be drawn from the facts to sustain the finding."

██ Negligence may be shown by circumstantial evidence. Walton & Co. v. Burchel, 121 Tenn., 715, 121 S. W., 391, 130 Am. St. Rep., 788; Nashville Railway & Light Co. v. Harrison, 5 Tenn. App., 22. But there must be evidence reasonably tending to prove the negligence alleged in the declaration as the cause of the plaintiff's injury. Elkin Motor Co. v. Ragland, 6 Tenn. App., 166. In Nashville Railway & Light Co. v. Harrison, supra, it was said:

"The rule that the jury cannot determine by guess or conjecture between two equally probable causes of the injury, for only one of which the defendant is responsible, has no application where there is no substantial evidence of the existence of a sufficient cause, or causes for the injury, aside from the negligence charged. Deschenes

v. Railroad, 69 N. H., 285, 46 A. 487; Crawford v. Maine Central R. R., 76 N. H., 29, 78 A., 1078.

"In 29 Cyc., 622, 625, the general rule, deduced from a multitude of cases, was set forth that circumstantial evidence to establish negligence, must be such that negligence can reasonably be inferred from the facts shown, or such as to satisfy reasonable minds thereof; that there must be more than a mere probability that the defendant was negligent; but that the plaintiff is not bound to exclude the possibility that the accident might have happened in some other way than alleged, but is required only to satisfy the jury by a fair preponderance of the evidence that it occurred in the manner alleged. The facts must tend to exclude any other cause, but the inference of exclusion of any other cause than that alleged need not be reached beyond doubt. In McRainey v. Va. & C. S. Railway Co., 168 N. C., 570, 84 S. E., 851, it was held that where after a fair consideration of the circumstantial evidence the more reasonable probability is in favor of negligence, the case is for the jury. In Warner v. N. Y., O. & W. Railway Co. [209 App. Div., 211], 204 N. Y. S., 607, it was said:

" 'When one reasonable mind can infer from all the evidence that a controlling fact was proved, while another reasonable mind can infer that it was not proved, a question of fact is presented . . . it is the province of the jury, not only to pass upon conflicting evidence, but where different inferences may be drawn from the evidence, to determine the inference . . . the establishment of facts clearly showing that through a reasonable inference, a logical conclusion may be reached that the injury resulted from a negligent act, is sufficient.' "

Thus, if reasonable men may fairly differ on the question of negligence, even from facts virtually undisputed, the question is for the jury. Philip Carey Roofing & Mfg. Co. v. Black, 129 Tenn., 30, 164 S. W., 1183, 51 L. R. A. (N. S.), 340.

In the instant case the evidence relied on as tending to show that the glass got into the bottle after it left the possession of the defendant is so meager that a jury might reasonably find that the evidence as a whole does not point to two equally probable causes of the existence of the glass in the bottle. The glass was in the bottle. There is no evidence, either direct or circumstantial, that it was placed there after it was delivered to the dealer. The jury might find that although the bottle was always kept behind the counter or in the frigidaire, third persons might have had access to it; but there is positive testimony that they did not. On the other hand, the jury might infer that it was not impossible for the glass to remain in the bottle after it went through the cleansing process in the factory. We think that this case is to be aligned with the coca cola cases of Yates,

Roddy Mfg. Co., Lewis, and Kennedy, supra, rather than with the Selvidge Case. Of course, the issue here is solely whether or not the case should have been submitted to the jury. We hold that the evidence. does not present matters of mere guess or conjecture, but of course we are not passing upon the weight of the evidence.

The judgment of the circuit court is reversed, and the cause will be remanded to that court for a new trial. The defendant will pay the costs of the appeal in error.

## ON PETITION TO REHEAR.

In this action the jury awarded to the plaintiff the sum of $1,000 as damages for personal injuries sustained from swallowing pieces of glass from a bottle of coca cola while it was being drunk by her from the bottle. No judgment was entered upon this verdict. The circuit judge sustained a contention made in the motion for new trial and dismissed the suit, holding that he should have granted the motion of defendant for a directed verdict in its favor upon the authority of Coca Cola Bottling Works v. Selvidge, 4 Tenn. App., 558, conceiving it to be analogous and controlling, although he stated his belief that the ruling in the Selvidge Case ought to be modified "at least to the extent that where there was a contention as to whether or not there was any opportunity for the glass to have gotten in there after it left the defendant and where there could be drawn an inference that it did not get in there after that, that matter could go to the jury."

The plaintiff thereupon entered a motion for a new trial and it was overruled and judgment was rendered dismissing the suit.

This court has hitherto reversed the judgment of dismissal in this cause, holding, upon an analysis of all the Tennessee decisions upon this subject, that there was evidence requiring a submission of the issue to the jury, as the evidence as a whole did not point to two equally probable causes of the existence of the glass in the bottle. The plaintiff now insists that as the circuit judge expressly approved the verdict sustaining the charge of negligence, this court should reinstate that verdict and render a judgment thereon which should have been awarded by the circuit court. This question is not determinable by the rule applicable upon appeal of a case tried without a jury. In this precise form it is res integra in Tennessee so far as we have been able to ascertain.

In Black v. Lumber Company, 7 Higgins (7 Tenn. Civ. App.), 151, and Chunn v. Flooring Company, 7 Higgins (7 Tenn. Civ. App.), 532, cases similar but not directly apposite, it was intimated that in some conceivable cases where motions for new trial had been over-

ruled, verdicts might be reinstated and final judgments thereon be pronounced by the appellate court. The instant case supplies elements not contained in those cases.

In this case the trial judge stated that he was entirely satisfied with the amount of the verdict; that he sustained the motion to direct a verdict on the authority of the Selvidge Case; that he overruled all of the motion for a new trial, except that ground that a directed verdict should have been entered. The defendant's motion for a new trial included the propositions that the evidence preponderates against the verdict, and that there is no evidence to sustain the verdict. The trial judge declared that he felt that the case ought to go to the jury, as there was evidence that there was no opportunity for anything to have happened to the bottle after it left the defendant's place up to the time when the plaintiff got it; and he was of the opinion "that there was no probability, at least no great probability, that there was ever anything put' in that bottle after Simmons (the retail dealer) got it." However, he interpreted the Selvidge Case as ruling that although the glass was in the bottle, the undisputed fact that the bottling company used all approved methods to get it out—to clean the bottle—would bar recovery. We have held that if this was the ruling it has since been modified.

It is manifest that the trial judge approved the verdict on the preponderance of the evidence and believed that actionable negligence was shown, but he felt bound by an erroneous conception of the law. At last, this court has considered and determined this legal question; and if the trial judge had ruled otherwise on this question and denied a new trial, this court would have affirmed the judgment for the plaintiff. The trial judge also stated that in his opinion the defendant had had a fair trial, and we concur with him. This case, therefore, is not to be aligned with Nashville, Chattanooga & St. Louis Ry. v. Perry, 13 Tenn. App., 268, and the cases therein reviewed, applying the rule that the appellate court can only reverse a judgment based upon the verdict of a jury, and award a new trial, where the trial judge did not express his approval of the verdict according to the preponderance of the evidence. The appellate court must know that the verdict of the jury has the approval of the judgment and conscience of the trial judge. "The judgment upon the verdict is not an idle ceremony, but is intended to convey to this court the approval of the trial judge of the weight and credibility of the witnesses as fixed by the verdict of the jury." Hamburger v. Railroad Co., 138 Tenn., 123, 196 S. W., 144, 146. In the case before us these requirements were really satisfied. It would be no violence to the rule of those cases to enter a judgment in this court upon the verdict, instead of remanding for a new trial upon the evidence,

or even remanding for entry of such judgment in the circuit court; for not only was there no want of approval of the verdict as to the preponderance of the evidence as showing a cause of action, but also the sole error was upon a rule of law applicable to the evidence. It was an error of law, and the trial judge is not subject to criticism for it, under the circumstances.

In Barnes v. Noel, 131 Tenn., 126, 174 S. W., 276, 277, it is said:

"The office of a motion for a new trial is not alone to secure another hearing, but to present the errors complained of for correction, if possible, without another hearing. 14 Enc. Pl. & Pr., 846; 2 Elliott on General Pr., section 987, cited and approved in Railroad v. Johnson, 114 Tenn., 632, 88 S. W., 169." It seems logical, therefore, that if an error is committed in attempting to correct a supposed error of law, made upon the trial, the appellate court may reverse the action taken and enter such judgment as should have been entered below; for it would not be passing upon the facts but upon the law. The effect of our previous decision in this case is that the jury had a right to hold that the mere use of approved appliances to clean the bottles· was not determinative. The error occurred after the trial. The jury passed on the facts under a proper charge.

In Perkins v. Brown, 132 Tenn., 294, 177 S. W., 1158, 1160, L. R. A., 1915F, 723, Ann. Cas., 1917A, 124 (an action at law), the rule was adopted that in the exercise of appellate jurisdiction, when it is seen clearly that a due administration of justice requires it, and the only question at issue is the measure of damages, the appellate court, on reversal of a judgment for the plaintiff, will qualify the order of remand so as to determine only the question of damages. The court said:

"If it is to the interest of the state that there be an end to litigation, the courts should not be slow to adopt this rule that looks to the preventing of further contest on phases of litigation or issues already well settled, the saving to litigants the costs incident to the relitigation of such matters, and to the courts the time unnecessarily consumed therein."

In a case where upon a former trial a verdict was rendered but was set aside upon motion for a new trial and bill of exceptions taken, the appellate court may, under chapter 106 of the Acts of 1875 (Code, secs. 8985, 8986), review the act of the trial judge in granting a new trial. The intention of this act was to give the excepting party the benefit of the former trial without regard to the merits of the case as developed on a subsequent trial. Barnes v. Noel, supra. In Gray v. Kent, Receiver, 5 Higgins (5 Tenn. Civ. App.), 519, the first trial resulted in a verdict for the plaaintiff, but this was set aside, not be-

cause of any dissatisfaction with the verdict, but because of supposed error in instructions to the jury. A wayside bill of exceptions was taken. Upon the second trial a verdict was directed for the defendant. It was held that the trial judge was in error in setting aside the first verdict and granting a new trial. The Court of Civil Appeals reinstated the first verdict and rendered judgment for the amount of the first verdict without remanding the cause. Its decision was affirmed by the Supreme Court.

In our opinion, this is a proper case for reinstatement of the verdict and pronouncement of judgment thereon by the appellate court. No error was committed upon the trial, the motion for new trial was sustained only by a mistake of law made after the trial, and but for this mistake the motion for a new trial would have been overruled. There was evidence to sustain the verdict. The cases of Perkins v. Brown, Gray v. Kent, Receiver, and other cases similar thereto, present impressive analogies showing the modern tendencies of our law to promote the due administration of justice and save time and expense. The defendant has had a fair trial by jury. The practice now adopted does not tend to any encroachment upon the functions of the jury. The practice is not unknown in certain other jurisdictions. Ellis v. Railroad Company, 120 Wis., 645, 98 N. W., 942; Monahan v. Schwartz, 128 Ky., 375, 108 S. W., 285; Gartner v. Goodman, 201 App. Div., 177, 194 N. Y. S., 258. To remand this cause for a new trial would but subserve the ends of technicalities, which are to be applied only as "instruments in the hands of justice to serve her ends, not cords to bind her." Lowry v. Railroad Co., 117 Tenn., 507, 101 S. W., 1157, 1160, 6 L. R. A. (N. S.), 887, 119 Am. St. Rep., 994.

Although no judgment was rendered in the circuit court upon the verdict for the plaintiff, a final judgment—a judgment of dismissal—was pronounced from which the appeal in error could be taken. This case is therefore distinguished from those cases (as Butcher v. Palmer, 4 Cold., 248; Sharp v. State, 117 Tenn., 537, 97 S. W., 812; Briggs v. Clawson Brothers & Nashville Trust Co., 3 Tenn. App., 146; Cobble v. International Agricultural Corporation, 2 Tenn. App., 356, 360, and Nolin v. State, 6 Cold., 12), in which the rule was declared and applied that an appeal in error from the circuit court in an action at law lies only from a final judgment.

The petition to rehear is granted. The order remanding the cause for a new trial will be set aside, and a judgment will be entered in this court in favor of the plaintiff in error against the defendant in error for $1,000 and all costs of this cause.

Faw, P. J., and Crownover, J., concur.